268 A.2d 437.

LUCILLE A. RHEAUME *vs.* DONALD H. RHEAUME.

AUGUST 6, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is a certiorari proceeding wherein we are reviewing the Family Court's denial of the petitioner's motion that he be allowed to give certain testimony by deposition. We shall refer to the parties to this litigation by their first names.

Lucille and Donald were married on June 29, 1963. One child was born of the marriage. Her name is Karen. She is five years old and lives with her mother in Woonsocket. It appears from the record certified to us that the parties have been separated for a period of approximately five years. On September 20, 1968, the District Court for the Eighth Judicial District of the State of Nevada entered a default judgment against Lucille and granted Donald's petition for divorce on the ground that the parties were separated for a period in excess of one year. Lucille received notice of the Nevada suit, but neither she nor any attorney acting on her behalf participated in that litigation. Although the Nevada decree made no provision for Lucille's support, it did provide that Donald would pay $15 a week for Karen's support until she reaches majority or becomes self-supporting. The decree makes the support payment subject to the express condition that Donald be afforded the right to visit Karen at reasonable times.

Sometime thereafter, Donald left Nevada and returned to New England. He took up residence in Plainville, Massachusetts, which is minutes away from Woonsocket. On March 13, 1969, Lucille filed a petition in the Family Court for a bed and board divorce. In the petition she asked for support for herself and Karen. Donald was served with a copy of the petition in Plainville, and on April 1, 1969, he entered a special appearance for the purpose of contesting the Family Court's jurisdiction alleging that he and Lucille were divorced in Nevada.

When Donald entered his special appearance, Lucille asked the court to issue additional process so that Donald

could be served once he came to Rhode Island to testify in support of his motion to dismiss her petition. Donald then filed a motion for a *dedimus potestatem* which would permit him to give testimony in support of his motion by deposition. In his motion, Donald expressed his apprehension that he would be served with process while in this state thereby giving the Family Court jurisdiction over him. The deposition was to be taken in Attleboro, Massachusetts. The motion for the *dedimus* was denied and this petition for a writ of certiorari followed.

The trial justice based his denial of Donald's motion on the following portion of G. L. 1956 (1969 Reenactment) §9-19-26:

> "In all cases of divorce, separation and annulment of marriage, the testimony shall be given viva voce in open court; provided, however, that the family court may permit the taking of depositions in cases where the witnesses or parties are aged, infirm or too ill to appear in court or for any other special cause."

It is conceded that Donald is neither aged nor infirm. He was enjoying good health at the time he asked the Family Court to authorize the taking of his deposition. In this proceeding he claims that the denial of his motion was a clear abuse of the trial justice's discretion and that it was in direct violation of the constitutional guarantees of equal protection of the laws, full faith and credit by one state to the judgment rendered in another and due process. We disagree.

In considering Donald's petition, we shall first consider his constitutional arguments and then determine if the trial justice's action amounted to an abuse of his discretion.

Recently, in *Beebe* v. *Fitzgerald*, 106 R. I. 650, 262 A.2d 625, we observed that the equal protection clause does not require that all persons be dealt with identically. This constitutional provision, while guaranteeing an equality of

treatment to all similarly situated, permits a reasonable classification which is based upon a substantial difference having a reasonable basis to the object or persons dealt with and the public purpose sought to be achieved.

It is a well-established rule in this jurisdiction that divorce proceedings differ substantially from all other civil actions in that the state is an interested party which seeks the preservation of the marital status. In furtherance of this interest, we have held that divorce shall be granted only on a showing by clear and convincing evidence of the guilt of the respondent spouse and the freedom from fault which the petitioner attributes to himself. The statutory bar against the use of a deposition in a divorce case is but another expression of the state's concern about matters of divorce with its likely ramifications in the lives and property rights of others. The statute which requires, that, apart from the statutory exceptions, all testimony relating to a divorce petition be given in the courtroom before the trial justice represents an effort by the legislature to preserve the matrimonial bond. The legislation is reasonable, not arbitrary. There is a correlation between the persons dealt with and the public purposes sought to be achieved by the statute. Section 9-19-26 does not violate the equal protection clause.

In his claim that the Family Court has refused to afford full faith and credit to his Nevada decree, Donald ignores our holding in *Rymanowski* v. *Rymanowski*, 105 R. I. 89, 249 A.2d 407. There we repeated the oft-stated rule that, although full faith and credit must be given to an ex parte divorce decree, all states are entitled to determine for themselves the jurisdictional basis upon which the foreign decree is founded and to withhold full faith and credit if not satisfied that the party asserting the foreign divorce was properly domiciled within the divorce-decreeing state at the time the decree was entered. In fact, in *Rymanow-*

*ski* we upheld the Family Court's finding that the husband was a bona fide domiciliary of Nevada at the time he obtained a divorce. The main thrust of *Rymanowski,* however, was the recognition of the "divisible divorce" doctrine. This concept recognizes that the marital status may be dissolved without necessarily extinguishing all of the obligations of a husband originally created by the common law as incidents thereto. *White* v. *White,* 83 Ariz. 305, 320 P.2d 702. The record before us shows this cause comes within the "divisible divorce" doctrine. The Nevada proceedings were wholly ex parte. Lucille and the minor child, Karen, have been at all times residents of Rhode Island. While in *Yarborough* v. *Yarborough,* 290 U. S. 202, 54 S.Ct. 181, 78 L.Ed. 269, the Supreme Court held that a decree fixing the amount of support for a child precluded a subsequent suit for support by the child even though it had not been a party to the previous suit, this case is not controlling here because in *Yarborough* the Court emphasized that the mother had personally appeared and participated in the divorce proceedings and that the Georgia decree incorporating a lump-sum settlement was final and nonmodifiable in that state. In the cause before us, there was no participation by Lucille in the Nevada suit and under Nevada law[1] a provision for the support of a child is subject to modification. The force and persuasiveness of *Yarborough*[2] seems especially questionable after the Supreme Court's subsequent rulings which recognize the doctrine of divisible divorce. H. Goodrich & E. Scoles, *Conflict of Laws* §139 at 280 (4th ed. 1964). As pointed out in *Elkind* v. *Byck,* 68 Cal.2d 453,

---

[1]Nevada Revised Statutes, 125.140 (2).

[2]*Yarborough* was decided in 1933. The divisible divorce doctrine appeared many years later in *Estin* v. *Estin,* 334 U. S. 541, 68 S.Ct. 1213, 92 L.Ed. 1561 (1948), and *Vanderbilt* v. *Vanderbilt,* 354 U. S. 416, 77 S.Ct. 1360, 1 L.Ed.2d 1456 (1957).

439 P.2d 316, the *Yarborough* decision has been the subject of extensive critical comment.

From the record before us, it appears that Rhode Island was the matrimonial domicile of the parties. Nevada never had personal jurisdiction over the mother and her child. Rhode Island has a substantial interest that its citizens will not become public charges because of some act of a sister state. While Donald may have reverted to single status, the nature and extent of his duty to support Lucille and the five-year old have yet to be resolved. The severance of the matrimonial bond ends the relationship of husband and wife. It does not, however, dissolve the relationship of father and child. We therefore find no merit in that phase of Donald's argument which speaks about this state's failure to afford full faith and credit to the Nevada decree. Although we may recognize Nevada's declaration that Donald and Lucille are no longer husband and wife, the Rhode Island courts are not precluded from determining Donald's obligation to pay alimony for Lucille and support for Karen.

Inextricably intertwined with Donald's allegations that he will be personally served with process in the pending bed and board petition once he crosses the Rhode Island-Massachusetts border is the issue of whether Donald should be immune from service of process in this state when and if he seeks to show that he is no longer married to Lucille. If he should be afforded such immunity, he should be permitted to have his deposition taken in Massachusetts.

At common law, a writ of protection or privilege would be granted to a nonresident suitor or witness by the court in which the action was pending. This writ would afford a party or a witness immunity from arrest and service of process during his attendance at court and for a reasonable time in going and returning therefrom. *Randall* v. *Randall,* 14 N. J. Super. 110, 81 A.2d 400. The privilege of

this exemption from service of process is not a privilege of the individual but of the court, and it exists so that the court's business may be expedited and justice duly administered. *Eberlin* v. *Pennsylvania R.R.*, 402 Pa. 520, 167 A.2d 155. The privilege is to be extended or withheld only as judicial necessity requires. *Lamb* v. *Schmitt*, 285 U. S. 222, 52 S.Ct. 317, 76 L.Ed. 720.

While the general rule is that parties and witnesses to a law suit voluntarily attending a judicial proceeding outside the territorial jurisdiction of their residence are immune or exempt from service of civil process in another suit while in attendance at court and for a reasonable time before and after going to court and returning to their homes, this has not been the rule in Rhode Island. Many years ago, this court ruled that a nonresident litigant would not be immunized against service of process in another suit while the litigant was present in this state attending court in connection with his litigation. The court said that it might extend immunity to a nonresident witness but not a litigant. It also indicated that immunity could be granted to a nonresident witness who is a nominal party having no personal interest in the outcome of the litigation. *Baldwin* v. *Emerson*, 16 R. I. 304, 15 A. 83. This holding was reaffirmed in *Capwell* v. *Sipe*, 17 R. I. 475, 23 A. 14.

We acknowledge that today, upon a proper showing, our immunity differential between an out-of-state litigant and an out-of-state witness might well be removed. Furthermore, we are quite conscious that in certain circumstances the proper administration of justice might require that a litigant who enters a special appearance and challenges the jurisdiction of a court in this state should be afforded immunity from process while he is here testifying in support of his challenge. However, we can see no reason to extend any such privilege to petitioner.

Donald has seen fit to enter a special appearance whereby he wishes to show the Family Court that he is no longer married to Lucille. He cannot expect this court or the Family Court to afford him sanctuary in Massachusetts whereby he can have his marital status adjudicated and be completely oblivious to the fact that Lucille and Karen's right to support is completely unresolved. Donald may come to Rhode Island and offer evidence to support his claim that he is no longer married. Once here, justice requires that an inquiry be made into all facets of the matter of support for Lucille and Karen.

The petition for certiorari is denied and dismissed; the writ heretofore issued is quashed, and the record is returned to the Family Court with our decision endorsed thereon.

JOSLIN, J., whom PAOLINO, J., joins, dissenting. The parties separated about five years ago, and in 1968 the husband was divorced from the wife by a Nevada court in proceedings where she, although served with process, did not appear either personally or by an attorney. In those proceedings provision was made for the support of the minor child of the parties, but no alimony or other support was awarded to the wife. She has now petitioned the Family Court for a divorce from bed, board and future cohabitation, and the husband appeared specially by an attorney solely to object to the Family Court's jurisdiction.

The basis of the husband's jurisdictional challenge is that, by virtue of being a bona fide resident and domiciliary of Nevada for the requisite time, he had acquired standing to invoke the jurisdiction of its courts to dissolve the marital relationship, and that in the circumstances the Nevada divorce decree is valid and final. If he can establish the truth of his assertions, Nevada's prior termination of the marital status, entitled to full faith and credit in this state under art. IV, sec. 1 of the United States Constitution, will deprive the Family Court of jurisdiction

in these proceedings. *Rymanowski* v. *Rymanowski,* 105 R. I. 89, 249 A.2d 407.

All the husband seeks is a full opportunity to prove his assertions in the courts of this state. He believes that his own testimony is vital, and that without it the Family Court will not be fully advised of the jurisdictional facts incident to the Nevada proceedings. He is justifiably apprehensive that his appearance to testify viva voce will result in the Family Court's acquiring jurisdiction over him so that it may award his wife temporary support for herself and their minor child, as well as counsel and witness fees. Indeed, looking to the accomplishment of those ends, the wife, upon learning that the husband had appeared specially in the divorce proceedings, moved for the issuance of additional process. That motion was acted upon favorably, and such process issued. Thereupon the husband petitioned the Family Court to allow his depositions to be taken in Massachusetts where he now resides, relying upon G. L. 1956 (1969 Reenactment) §9-19-26, which permits the taking of depositions in divorce proceedings "where the witnesses or parties are aged, infirm or too ill to appear in court *or for any other special cause."* (Emphasis supplied.)

The majority find nothing in the circumstances of this case which constitutes that kind of "special cause" which would allow the taking of the husband's depositions. I cannot agree. It seems illusory to me to permit the husband to appear specially to protest any attempt by the Family Court to exercise jurisdiction over the marital status or over his person, as he has a right to do in this state,[1] *Accardi* v. *Accardi,* 97 R. I. 336, 197 A.2d 755;

---

[1]Nothing in the Constitution of the United States requires the courts of this state to recognize as a special appearance one which is stated to be solely for the purpose of challenging jurisdiction, or from holding that such an appearance does not submit the party to the general jurisdiction of the court. *York* v. *Texas,* 137 U. S. 15, 11 S.Ct. 9, 34 L.Ed. 604.

*Bridges* v. *Bridges,* 46 R. I. 191, 125 A. 281, and at the same time to exact from him, as the price for that attempt, all of the consequences to which he·would have been subject had he appeared generally' rather than specially. But this is what the majority do.·

First they refer to *Baldwin* v. *Emerson,* 16 R. I. 304, 15 A. 83, and *Capwell* v. *Sipe,* 17 R. I. 475, 23 A. 14, but those cases do not dictate the exaction of such a penalty from a person who appears specially. They go no further than to say that an out-of-state suitor who has either invoked our courts' jurisdiction or appeared generally to defend in our courts is not exempt from service of civil process while he is attending court either to prosecute his claim, or to present his defense. They do not touch upon the problem of an out-of-state party's susceptibility to the service of process in an action or proceeding involving or connected with the subject matter of the litigation in which he has appeared specially for the sole purpose of challenging jurisdiction.

In addition, they rely upon the state's legitimate concern for the preservation of the marital relationship of the parties, a concern which is without relevance here if that relationship has already been validly and finally determined in Nevada. They also say that application of the "divisible divorce" doctrine—first recognized by us in *Rymanowski* v. *Rymanowski, supra*—might prevent the wife and the minor child from becoming public charges, but there is nothing in the record which indicates the likelihood of that occurring. Moreover, were that possibility to eventuate, the wife could then cross the state line and attempt to persuade the Massachusetts court of the wisdom of *Rymanowski,* where, following the current trend of the authorities, we held that a foreign divorce decree, even though it may have validly terminated the marital status, will be ineffectual in the courts of this state on the

issue of alimony or support if the foreign jurisdiction granting the divorce lacked personal jurisdiction over the wife.

The reasons the majority give for their conclusion do not, therefore, in my judgment, suffice as a logical basis for denying the husband the right to depose which, in the light of the majority's extension of *Baldwin* and *Capwell, supra,* is the only effective means he possesses for exercising his right to challenge the Family Court's jurisdiction in the proceedings commenced by his wife.

The husband's petition to testify by deposition was addressed to the sound judicial discretion of the trial justice. That discretion should have been exercised in the light of reason as applied to all of the facts and with a view to the rights of the husband as well as to those of the wife. *Colitz* v. *Gilbert,* 53 R. I. 319, 166 A. 685. In my judgment the rights of the husband were completely ignored, and that constitutes an abuse of discretion. I would grant the petition for certiorari and quash the decision denying the husband's petition for the issuance of a *dedimus potestatem.*

*Isidore Kirshenbaum, Alfred Factor,* for petitioner.

*Max Levin, Arnold J. Resnick,* for respondent.