Georgia SLESSINGER,
Plaintiff, Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee.

No. 87–1231.

United States Court of Appeals, First Circuit.

Submitted Sept. 18, 1987.

Decided Dec. 28, 1987.

---

Richard E. Fleury, Linda S. MacDonald and Saunders, Dumas & Fleury, East Greenwich, R.I., on brief, for plaintiff, appellant.

Robert M. Peckrill, Asst. Regional Counsel, Dept. of Health and Human Services, Lincoln C. Almond, U.S. Atty., and Michael P. Iannotti, Asst. U.S. Atty., on brief, for defendant, appellee.

Before BOWNES, BREYER and SELYA, Circuit Judges.

PER CURIAM.

Claimant Georgia Slessinger filed an application for mother's insurance benefits on September 24, 1984 based on the death on November 29, 1981 of her husband Steven Slessinger. After a hearing, the Administrative Law Judge ("ALJ") found on September 5, 1985 that claimant was not entitled to mother's insurance benefits because of her remarriage to Donald Snow on October 22, 1983. The ALJ ruled that a divorce decree obtained by claimant and Donald Snow in the Dominican Republic on August 6, 1984 did not end her marriage to Snow. The ALJ applied Rhode Island law to determine the validity of the divorce decree because Rhode Island was the state of Steven Slessinger's domicile at the time of his death. The ALJ held that Rhode Island would not recognize the Dominican divorce

decree because neither claimant nor Snow was domiciled in the Dominican Republic at the time of the divorce. After the Appeals Council denied claimant's request for review of the ALJ's decision, claimant appealed to the district court, which affirmed the Secretary. Claimant appeals. We affirm.

The issue in this appeal involves the Secretary's determination of the law governing recognition of claimant's Dominican divorce. As we will note in more detail below, there were no disputed factual issues before the Secretary. Accordingly, we do not apply a substantial evidence standard in reviewing the Secretary's conclusions. Application of that standard is limited to "[t]he findings of the Secretary as to any fact." 42 U.S.C. § 405(g). The Secretary's conclusions of law are reviewable by this court. *Thompson v. Harris*, 504 F.Supp. 653, 654 (D.Mass.1980).

■ Under 42 U.S.C. § 402(g)(1) and 20 C.F.R. § 404.339, a widow may continue to receive mother's insurance benefits only as long as she remains unmarried. Neither the Act nor the Secretary's regulations specify to what law the Secretary should refer in determining whether a divorce decree has validly terminated a marriage for purposes of § 402(g)(1).

We cannot accept claimant's contention that in making this determination the Secretary should refer not to the law of any particular state, but rather to some form of federal law of divorce, arising out of the Act, governing the validity of divorce decrees for purposes of mother's insurance benefits. Claimant argues that since the Act should be liberally construed in favor of claimants seeking benefits, *see Cunningham v. Harris*, 658 F.2d 239, 243 (4th Cir.1981), this purported federal law of divorce under the Act should be applied, as a matter of broad statutory construction, to accord generous recognition to divorce decrees in order to permit eligibility for benefits. However, both the Act and the Secretary's regulations expressly mandate reference to state law to evaluate other aspects of eligibility for mother's insurance benefits. 42 U.S.C. § 416(h)(1)(A) provides,

An applicant is the wife, husband, widow, or widower of a fully or currently insured individual for purposes of this subchapter if the courts of the State in which such insured individual is domiciled at the time such applicant files an application, or, if such insured individual is dead, the courts of the State in which he was domiciled at the time of death, or, if such insured individual is or was not so domiciled in any State, the courts of the District of Columbia, would find that such applicant and such insured individual were validly married at the time such applicant files such application or, if such insured individual is dead, at the time he died.

Under 20 C.F.R. § 404.345, similarly, the Secretary must refer "to the laws of the State where the insured had a permanent home when he or she died" to determine whether the insured and the claimant "were validly married under State law." Given these provisions, we cannot think that Congress intended that the validity of a claimant's divorce could be determined other than by reference to applicable state law. *See Lugot v. Harris*, 499 F.Supp. 1118 (D.Nev.1980) (court applied the law of the state of the parties' domicile, Nevada, to determine the validity of the insured's Mexican divorce from his first wife for purposes of deciding the insured's second wife's claim for widow's insurance benefits).

This conclusion is strongly reinforced by the settled principle that matters of divorce and marital status are uniquely of state, not federal, concern. *See, e.g., Sosna v. Iowa*, 419 U.S. 393, 404, 95 S.Ct. 553, 559–60, 42 L.Ed.2d 532 (1975); *Armstrong v. Armstrong*, 508 F.2d 348 (1st Cir.1974). It would do violence to this principle for a court to apply federal law under the Act to give effect to a foreign divorce decree that would not be honored in the state of domicile.

We note claimant's point that 20 C.F.R. § 404.346 provides,

If your relationship as the insured's wife, husband, widow, or widower cannot be established under State law as explained

in § 404.345, you may be eligible for benefits based upon a deemed valid marriage. You will be deemed to be the wife, husband, widow, or widower of the insured if, in good faith, you went though a marriage ceremony with the insured that would have resulted in a valid marriage except for a legal impediment.

*See* .42 U.S.C. § 416(h)(1)(B). Section 404.-347 adds a requirement that the insured and spouse have been "living in the same household" at relevant times. It is true that in applying these provisions the Secretary must determine the existence of a "deemed valid marriage" by reference to the specific eligibility requirements set out in the statute and regulations as a matter of federal law, and cannot rely on the law of the state of domicile. However, the Act and regulations do not similarly set out criteria by which the Secretary might determine the validity of a divorce decree as a matter of federal law. Nothing in the Act or regulations suggests that such a determination should be made other than by reference to applicable state law.

█ Finally, we find frivolous claimant's argument that the Secretary's decision to apply state law to determine the validity of a divorce, in the absence of any express statutory or regulatory provision directing such application, constitutes an impermissible promulgation of a new regulation without appropriate notice and comment procedures. The Secretary hardly need promulgate a new regulation whenever he is required, in his adjudicatory capacity, to interpret the Act in order to resolve an issue not determined by existing regulations.

█ As for the choice of which state's law should govern, we see no error in the Secretary's decision to apply Rhode Island law to determine the validity of the Dominican divorce decree. It is undisputed that the insured was domiciled in Rhode Island when he died. Accordingly, under 20 C.F.R. § 404.345 Rhode Island law clearly governs a fundamental requirement for claim-

ant's eligibility for benefits, *i.e.*, whether claimant and the insured were validly married. It is undisputed, also, that claimant was a Rhode Island domiciliary at the time of the divorce decree (the decree itself specifically so states). Therefore, regardless of whether the insured's domicile or the claimant's domicile is thought determinative, Rhode Island law should apply. It is true that there is no dispute that claimant's second husband, Frank Snow, was domiciled in Massachusetts at the time of the divorce decree. However, even if it were thought that Massachusetts law could apply, we conclude, as we explain below, that neither Rhode Island nor Massachusetts would give effect to the Dominican divorce decree under the circumstances of this case.

We first consider the law of Rhode Island in this area. The district court, the Secretary, and the parties essentially agree that Rhode Island has not spoken on the precise question of the validity in Rhode Island of a bilateral divorce decree obtained in another country by parties without domicile in the decree-granting jurisdiction. Our independent research into Rhode Island law confirms this conclusion. Nor do we find, contrary to the respective contentions of the parties, that such Rhode Island authority as exists points persuasively in one direction or the other.

█ The Secretary points to Rhode Island authority "repeat[ing] the oft-stated rule that, although full faith and credit must be given to an ex parte divorce decree, all states are entitled to determine for themselves the jurisdictional basis upon which the foreign decree is founded and to withhold full faith and credit if not satisfied that the party asserting the foreign divorce was properly domiciled within the divorce-decreeing state at the time the decree was entered." *Rheaume v. Rheaume*, 107 R.I. 500, 504, 268 A.2d 437, 440 (1970). *See Rymanowski v. Rymanowski*, 105 R.I. 89, 94, 249 A.2d 407, 409 (1969).[1] These

---

1. These cases involved decrees of sister states, the recognition of which is governed by the full faith and credit clause of the Constitution, art. 4, § 1, whereas a decree of a foreign nation is not governed by that clause and is recognized only through principles of comity. *Cf. O'Brien*

cases, however, involved ex parte decrees. In the instant case, by contrast, both parties appeared before the Dominican tribunal, claimant in person and Donald Snow through his attorney.

■ Claimant relies on Rhode Island authority barring a party who consented to a foreign state's jurisdiction over his or her divorce proceeding in that state, and who participated in that proceeding, from collaterally attacking the foreign state's divorce decree on the ground that the foreign state lacked jurisdiction because neither party was domiciled there. *Nevin v. Nevin*, 88 R.I. 426, 149 A.2d 722 (1959); *Ramsay v. Ramsay*, 79 R.I. 441, 90 A.2d 433 (1952); *Horowitz v. Horowitz*, 58 R.I. 396, 192 A. 796 (1937). In the instant case, however, it is the Secretary, not a party to the divorce, who mounts the collateral attack. The above-cited cases do not hold that the foreign divorces in question are valid for all purposes. Instead, these cases rely on principles of estoppel to prevent a party who participated in a foreign divorce from turning around and attacking the divorce whenever it suits his or her interests to do so. "The theory [of estoppel] is that [the divorce] is not made valid by reason of the estoppel but that the estopped person may not take a position that the divorce ... was invalid." *Poor v. Poor*, 381 Mass. 392, 396 n. 6, 409 N.E.2d 758, 761 n. 6 (1980) (quoting *Spellens v. Spellens*, 49 Cal.2d 210, 219, 317 P.2d 613, 618 (1957)). No such principles of estoppel apply to the Secretary. The Secretary has derived no benefit from the decree that would render it inequitable for the Secretary to contest the decree. It would be an odd rule that would require the Secretary to give effect to an otherwise invalid foreign divorce decree (even, hypothetically, one obtained for the sole purpose of re-establishing an entitlement to mothers' insurance benefits) merely because a participant in the divorce would be estopped from a collateral challenge.

*v. Costello*, 100 R.I. 422, 430–31, 216 A.2d 694, 699 (1966). However, we may look to cases

■ Claimant contends, correctly, that her Dominican divorce cannot be denied recognition in Rhode Island under R.I.Gen. Laws § 15–6–2 (Rhode Island's version of section 1 of the Uniform Divorce Recognition Act, 9 Unif.Laws Ann. 644 (1979)), which provides, "*Ex parte divorce in another state between parties resident in this state.* A divorce from the bonds of matrimony obtained in another jurisdiction in ex parte proceedings shall be of no force or effect in this state, if both parties to the marriage were domiciled in this state at the time the proceeding for the divorce was commenced.*" In this case, one party was not domiciled in Rhode Island; the decree was granted in another country, not another state; and the divorce was not obtained ex parte.

Claimant also suggests, however, that the failure of this statute to deny effect to any foreign divorce that is *not* ex parte signals a belief on the part of the Rhode Island legislature that bilateral foreign divorces would be accorded recognition under all circumstances. We cannot agree. We acknowledge that section 1 of the Uniform Divorce Recognition Act applies to bilateral divorces, and that the restriction to ex parte divorces was added by the Rhode Island legislature upon its adoption of its version of the Act. However, we have already noted the Rhode Island case law granting effect to bilateral foreign divorces when these divorces are challenged by one of the participants in the foreign divorce proceeding. *See, e.g., Ramsay, supra,* 79 R.I. 441, 90 A.2d 433. We understand the Rhode Island statute to have been intended to preserve that case law, with which section 1 of the Uniform Divorce Recognition Act might be thought inconsistent. That does not suggest that the Rhode Island legislature intended that any and all foreign divorces not denied effect by the provisions of § 15–6–2 would automatically be accorded recognition. To the contrary, we think it more likely that the legislature intended to preserve Rhode Island common law to determine the validity of foreign

involving decrees of other states for guidance.

divorces not expressly covered by the statute. Indeed, since the statute does not appear to govern a divorce decree of a foreign country at all, there can be no doubt that we must look to Rhode Island common law to determine the effect of such a decree.

■ We turn, then, to the question whether the common law of Rhode Island would recognize claimant's divorce. Under *Williams v. North Carolina*, 325 U.S. 226, 65 S.Ct. 1092, 89 L.Ed. 1577 (1945), domicile is the basis of a state's jurisdiction to grant a divorce, and the full faith and credit clause of the Constitution does not prevent another state from questioning the jurisdictional basis of the decree when neither party was domiciled in the decree-granting state. As we have pointed out, however, there is no Rhode Island case authority adjudicating the recognition of a bilateral foreign divorce, obtained in a jurisdiction in which neither party is domiciled, where the party seeking to attack the divorce is not estopped. In the absence of Rhode Island cases directly on point to provide authoritative guidance, this court must forecast what the Rhode Island Supreme Court would decide if it were faced with the issue. *See Oman International Finance Ltd. v. Hoiyong Gems Corp.*, 616 F.Supp. 351, 358 n. 5 (D.R.I.1985); *Plummer v. Abbott Laboratories*, 568 F.Supp. 920, 921–22 (D.R.I.1983). In doing so, we may look to opinions of courts in other states. *Murphy v. Erwin–Wasey, Inc.*, 460 F.2d 661, 663 (1st Cir.1972); *Oman International Finance Ltd.*, *supra*, 616 F.Supp. at 358 n. 5; *Plummer*, *supra*, 568 F.Supp. at 922.

The overwhelming majority of states that have considered the issue have denied recognition to bilateral foreign divorces decreed in the absence of domicile. According to an annotation at 13 A.L.R.3d 1419, 1425–41 (1965), twenty states would deny recognition in these circumstances, while only one state (New York) would accord recognition. *Rosenstiel v. Rosenstiel*, 16 N.Y.2d 64, 209 N.E.2d 709 (1965), *cert. denied*, 384 U.S. 971, 86 S.Ct. 1861, 16 L.Ed.2d 682 (1966). The annotation states, "Except in New York, foreign 'bilateral'

divorce decrees, rendered upon the physical presence of the petitioning spouse in the divorcing nation and the voluntary appearance of the defendant spouse in the proceedings through an attorney, are not usually accorded domestic recognition." 13 A.L.R.3d at 1433. Since 1965 this balance has remained essentially unchanged. *See, e.g., Prudential Insurance Co. of America v. Lewis*, 306 F.Supp. 1177 (N.D.Ala.1969); *Bruneau v. Bruneau*, 3 Conn.App. 453, 489 A.2d 1049 (1985); *Weber v. Weber*, 200 Neb. 659, 265 N.W.2d 436 (1978); *Kugler v. Haitian Tours, Inc.*, 120 N.J.Super. 260, 293 A.2d 706 (1972). We believe that the Supreme Court of Rhode Island would follow this overwhelming weight of authority. We conclude, furthermore, that that court would follow the decisions of other states permitting a party to attack a foreign divorce for lack of domicile where principles of estoppel did not pose a bar. *See Thompson v. Harris*, 504 F.Supp. 653 (D.Mass. 1980); *Weber, supra*, 200 Neb. 659, 265 N.W.2d 436; *Warrender v. Warrender*, 79 N.J.Super. 114, 190 A.2d 684 (1963), *aff'd*, 42 N.J. 287, 200 A.2d 123 (1964). We think this result clear enough to render it unnecessary to certify this question of Rhode Island law to the Rhode Island Supreme Court under Rule 6 of the Rhode Island Rules of Appellate Procedure.

Massachusetts law would mandate the same result, were that law to govern. In *Bergeron v. Bergeron*, 287 Mass. 524, 192 N.E. 86 (1934), the Massachusetts Supreme Judicial Court held that "[a] decree of divorce granted in another State or nation may be attacked by proof that the court had no jurisdiction." 287 Mass. at 528; 192 N.E. at 89. The court went on to hold that "the Courts of a foreign country have no jurisdiction to dissolve the marriage of parties not domiciled in such foreign country at the commencement of the proceedings for divorce.... To recognize the Mexican divorce as valid in the circumstances here disclosed [an ex parte divorce in Mexico, where neither party was domiciled] would frustrate and make vain all State laws regulating and limiting divorce. By such recognition State control over the marriage relation would be destroyed." 287 Mass. at

529; 192 N.E. at 89. While the divorce attacked in *Bergeron* was ex parte, not bilateral, the court's language was broad and would appear—especially in light of the above-cited case law from other jurisdictions—to extend to bilateral divorces. *See Thompson v. Harris*, 504 F.Supp. 653, 654 (D.Mass.1980) (parties and court assumed that Massachusetts law would not recognize a bilateral Mexican divorce without domicile).

In Massachusetts, as in Rhode Island, principles of estoppel may bar a participant in a foreign divorce decree, or a stranger to the decree who has knowingly accepted benefits under it, from challenging its validity. *Poor v. Poor*, 381 Mass. 392, 409 N.E.2d 758 (1980); *McCarthy v. McCarthy*, 361 Mass. 359, 280 N.E.2d 151 (1972). However, Massachusetts law is clear that where, as here, there is no estoppel, a stranger to the foreign decree may collaterally attack it if domicile, "a jurisdictional prerequisite to a valid judgment of divorce," is lacking. *Thompson v. Harris*, 504 F.Supp. 653, 654 (D.Mass.1980); *Old Colony Trust Co. v. Porter*, 324 Mass. 581, 88 N.E.2d 135 (1949).

■ Contrary to claimant's contention, our result in this case in no way contravenes the principle that the Social Security Act should be construed liberally in order to further its remedial purposes. *See Cunningham v. Harris*, 658 F.2d 239, 243 (4th Cir.1981). Construing the Act to contemplate reference to state law to determine the validity of a divorce decree is a neutral construction which will neither help nor hinder claimants as a group. It happens that in this case the applicable state law standards result in a denial of benefits. We reject any implication that, in the absence of Rhode Island authority on point, we should interpret Rhode Island law liberally in favor of claimants. The principle of liberal construction governs interpretations of the Social Security Act itself. It can have no application to this court's, or the Secretary's, determination of state law. *See, e.g., Moores v. Greenberg*, 834 F.2d 1105, 1107, n. 3 (1st Cir.1987) (federal court

has "no roving commission to superimpose federal choices upon the framework of state law" ... but must "determine the rule that the [state] Supreme Court would probably follow...." (citations omitted)).

We have considered claimant's other arguments and find them meritless.

The judgment of the district court is *affirmed*.