Murillo v. Shalala                     CV-94-223-B   05/04/95
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW HAMPSHIRE


Guadalupe Murillo

     v.                               Civil No. 94-223-B

Donna E. Shalala, Secretary
     Health and Human Services


                       **O R D E R**


     Guadalupe Murillo appeals the Secretary's decision denying

his application for disability insurance and supplemental

security income benefits.  He contends that the Administrative

Law Judge ("ALJ") failed to adequately consider his subjective

pain complaints and erroneously decided that his impairment did

not prevent him from doing his past relevant work.  Because I

find that there is substantial evidence in the record to support

the ALJ's decision, I affirm.


                      **BACKGROUND**[1]

     Murillo was born in Mexico on December 12, 1966, and was

twenty-six years old at the time of the administrative hearing

_____

     [1]  Unless otherwise indicated, the facts are taken from the
stipulated facts filed jointly by the parties.

held on August 31, 1993.  He was educated through the sixth grade.  He was Spanish speaking at the time of the hearing, communicating through an interpreter.  He testified to past employment as a molding machine operator, as a packer of neckties and plastic utensils, and as a mattress assembler.

Murillo injured his back while working as a molding machine operator in August 1990 and alleges that he has been disabled since December 4, 1991, when he stopped working due to back pain.  He applied for disability insurance benefits and supplemental security income benefits on October 15, 1992.  His applications were denied initially and upon reconsideration, and he requested a hearing.

The first medical record of treatment for back pain in the hearing record[2] is an examination by Dr. William Kilgus in January 1992.  In the notes of that examination, Dr. Kilgus reported Murillo's back injury and "vague, ill-described pains

---

[2] A later treating doctor recorded that Murillo told him that he had been treated by Dr. Bell, an osteopath, at the time of the injury and that medications and manipulations from that treatment enabled him to return to work.  Dr. Bell's treatment records are not included in the hearing record.

affecting his left lower extremity."[3]  Dr. Kilgus noted a good range of motion of the lower back with mild pain and spasm on extremes of motion.  His assessment of the injury was chronic lumbar strain, and he recommended physical therapy.  In his notes for subsequent visits, Dr. Kilgus noted no improvement despite physical therapy and Murillo's increased complaints of back and leg pain.  A magnetic resonance imaging test done in April 1992 revealed a herniated lumbar disk.  Murillo was referred for a neurosurgical consultation.

Murillo was examined in June 1992 by Dr. Ronald Faille, a neurosurgeon, who noted his impression of left lumbar radiculopathy (disease of the nerve roots) and recommended further testing to determine the nature and degree of impairment. He reported normal gait, strength, and sensation with no spasm in the legs, and significant limitation of motion with spasm in the left paraspinal muscles of the back.  In July, a CT scan and myelogram were done which showed no evidence of disk herniation but did show spondylolisthesis (forward displacement of one vertebra over another) and bilateral spondylosis (dissolution of

---

[3]  The record does not indicate how Murillo communicated with Dr. Kilgus although other treatment records state that he used an interpreter.

3

a vertebra) at the L5-S1 level.

From August to December 1992, Murillo received chiropractic treatments several times a week. The chiropractor reported by November that Murillo had improved significantly and that he thought Murillo could work as long as the job was not strenuous. He found Murillo capable of sitting, standing, walking, lifting, carrying, and bending within reasonably light weight limits of 10 to 15 pounds. During the same period, Drs. Kilgus and Faille also treated Murillo and found that his medical condition remained unchanged as he continued to have back pain that radiated down his left leg, with an incomplete range of motion and mild degree of back spasm. Dr. Faille gave his opinion that Murillo would require back surgery before he would achieve relief from the back injury.

In November 1992, Dr. Homer Lawrence, a consultant for the Disability Determination Program, reviewed Murillo's records and found that he retained the residual functional capacity ("RFC") to do light work with some activity and postural limitations. Another evaluation done in February 1993 also found Murillo capable of light work with limitations. Dr. Kilgus provided an assessment of Murillo's RFC in August 1993, based upon his examination in July. He stated that Murillo's condition remained

4

unchanged and described Murillo's back injury, including a herniated disk at the L4-L5 level, as a contributing factor for his symptoms. He determined that Murillo was not totally disabled from any type of work, that he retained some light work capacity so that he could lift up to twenty pounds for up to one-third of an eight-hour day, and that during the work day, he could stand and walk for four hours and sit for four hours as long as he did not do any of the activities for more than two hours without interruption.

At the hearing held on August 31, 1993, speaking through an interpreter, Murillo testified that he was prevented from working primarily by constant lower back pain. The back pain also moved into his left leg, and he sometimes had shooting pain or numbness in his left foot. Because of pain, he could only walk for about fifteen to twenty minutes at a time; he could sit for thirty to thirty-five minutes, and his sleep was interrupted. He testified that he could lift a gallon of milk using both hands. He said that he takes medication for pain, but that the back brace prescribed for him caused pain and made it difficult to breathe when he sat. Describing his past employment, he said that neither the packing job at Sweetheart Plastics nor the mattress assembly job allowed sitting, and that the plastics packing job

5

required standing for twelve-hour days.  His job packing neckties allowed him to alternate his position between sitting and standing and required lifting boxes of twelve to fifteen pounds.

The vocational expert testified that if Murillo had a RFC to do light work without lifting more that fifteen to twenty pounds, he could return to either of his past packing jobs.  When the ALJ restricted the hypothetical to allow change of position between sitting and standing at two hour intervals with neither lasting more than four hours in an eight-hour day, the vocational expert testified that Murillo would be able to do only the necktie packing job.  The ALJ posed two other hypotheticals to the vocational expert with increasingly restricted RFC's, and Murillo's attorney described a hypothetical capacity limited by being incapacitated from work for twenty percent of each work day which resulted in no available work.  The vocational expert found that the more restricted RFC's would not allow Murillo to return to his prior work.

In his decision, the ALJ decided that Murillo's subjective complaints of pain were not entirely credible and found that he had "the residual functional capacity to perform work-related activities except for work involving the exertional requirements of very heavy, heavy and medium work."  Based on that RFC, the

6

ALJ found that Murillo could return to his past relevant work as a packer, and therefore that he was not disabled within the meaning of the Social Security Act. The ALJ denied Murillo's applications for benefits, and the Appeals Council declined review. This appeal followed.

## STANDARD OF REVIEW

After a final determination by the Secretary and upon request by a party, this court is authorized to review the pleadings and the transcript of the record of the proceeding, and enter a judgment affirming, modifying, or reversing the Secretary's decision. 42 U.S.C.A. § 405(g). The court's review is limited in scope, however, as the Secretary's factual findings are conclusive if they are supported by substantial evidence. Id.; Ortiz v. Secretary of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991). The Secretary is responsible for settling credibility issues, drawing inferences from the record evidence, and resolving conflicting evidence. Id. Therefore, the court must "'uphold the Secretary's findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Secretary's] conclusion.'" Id. (quoting Rodriguez v. Secretary of Health & Human Serv., 647

7

F.2d 218, 222 (1st Cir. 1981). However, if the Secretary has misapplied the law or has failed to provide a fair hearing, deference to the Secretary's decision is not appropriate, and remand for further development of the record may be necessary. Carroll v. Secretary of Health & Human Servs., 705 F.2d 638, 644 (2d Cir. 1983). See also Slessinger v. Secretary of Health & Human Servs., 835 F.2d 937, 939 (1st Cir. 1987).

## DISCUSSION

On appeal, Murillo challenges the ALJ's denial of benefits on two grounds. First he argues that the ALJ failed to adequately consider his subjective pain complaints. Second, he contends that the record does not contain substantial evidence to support the ALJ's determination that he could return to his past work as a packer. I address each argument in turn.

### A. Subjective Complaints of Pain

Once a claimant presents a "clinically determinable medical impairment that can reasonably be expected to produce the pain alleged," the ALJ must consider the claimant's subjective complaints of pain. Avery v. Secretary of Health and Human Servs., 797 F.2d 19, 21 (1st Cir. 1986); accord 42 U.S.C.A. § 423(d)(5)(A) (Supp. 1995); 20 C.F.R. §§ 404.1529(c), 416.929(c).

8

In determining the weight to be given to allegations of pain, the claimant's complaints "need not be precisely corroborated by objective findings, but they must be consistent with medical findings."  Dupuis v. Secretary of Health and Human Servs., 869 F.2d 622, 623 (1st Cir. 1989).  When the claimant's reported symptoms of pain are significantly greater than the objective medical findings suggest, the ALJ must consider other relevant information to evaluate the claims.  Avery, 797 F.2d at 23.  The ALJ must inquire about the claimant's daily activities; the location, duration, frequency, and intensity of pain and other symptoms; precipitating and aggravating factors; the characteristics and effectiveness of any medication, treatments, or other measures the claimant is or has taken to relieve pain; and any other factors concerning the claimant's functional limitations due to pain.  20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); Avery, 797 F.2d at 23.  If the ALJ has considered all relevant evidence of claimant's pain, "[t]he credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings."  Frustaglia v. Secretary of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987).

9

The medical evidence in the record established a medically determinable impairment due to chronic lumbar strain caused by a bone and disk injury. Murillo's treating neurosurgeon stated that he would need surgery to improve the condition. Murillo took prescribed medication for pain. His orthopedic doctor determined that as of July 1993, a month before the hearing, Murillo did not have capacity for full sedentary work for an eight-hour day. He stated that Murillo could do non-strenuous light work with his arms as long as he could vary his position between sitting and standing at two-hour intervals and would not have to keep either position longer than four hours in an eight-hour day. I now consider whether Murillo's reported symptoms of pain require greater functional restrictions than are demonstrated by the medical evidence alone. Avery, 797 F.2d at 23.

Murillo testified that he has low back pain almost all of the time which is triggered by movement and which goes into his left leg. He said that he takes medicine prescribed for the pain but that the medicine makes him sleepy. Although he said that he had taken his pain medication the morning of the hearing, he also testified that he had driven from Nashua to Manchester for the hearing, and he did not describe any symptoms of sleepiness. For

10

his daily activities, Murillo described getting up early in the morning, bathing, eating, walking, washing the dishes, and then resting for fifteen or twenty minutes. During the day he described walking for no more than twenty minutes at a time, and driving no farther than the drive between Nashua and Manchester. After a twenty-minute walk, he said he was tired and stayed in bed for three to four hours. He attended church for fifteen to twenty minutes. He said that he could not help with housework because he could not lift. When he watched television, he could sit for awhile and then he had to get up. He testified that he could stand for fifteen to twenty minutes at a time and could sit thirty to thirty-five minutes and that he could bend to put on a shoe, but that it bothered his back. He said that he could lift an eight-pound gallon of milk with pain, while Dr. Kilgus reported that he could lift up to twenty pounds as long as he did not have to do so more than one-third of an eight-hour day. In response to questioning by his attorney, he said that he had numbness and shooting pain in his left foot that caused his leg to give out after walking or standing for more than fifteen or twenty minutes.

In partially discounting Murillo's subjective pain complaints, the ALJ considered all of the relevant information

11

required by <u>Avery</u> and the applicable pain regulations.  Moreover, there is substantial medical evidence in the record to support the ALJ's resolution of this credibility question.  Under these circumstances, I am in no position to second guess the ALJ's resolution of this disputed point.[4]

B.  **Sufficiency of the Evidence**

The ALJ determined that Murillo was not disabled because he could return to his past relevant work.  He based this determination on a finding that Murillo was capable of a full range of light work without further restriction.  Although the record contains substantial evidence to support the ALJ's ultimate conclusion that Murillo can return to his past relevant work, I cannot accept the ALJ's subsidiary finding that Murillo is capable of engaging in light work without restrictions.

---

[4]  During the course of the hearing, the ALJ made several inappropriate remarks.  In particular, I note the ALJ's comment about Latin American men at page forty-five of the record.  The ALJ also included a comment in the narrative portion of his decision, at page seventeen of the record, making a negative generalization about all claimants.  Because the claimant has not raised bias as an issue in this case, I decline to address the question sua sponte.  Nevertheless, I direct the defendant to provide a copy of this Order with a copy of the transcript to the appropriate person charged with supervising the ALJ in this case.

12

The evaluations done by Murillo's treating doctors included restrictions on the amount of weight Murillo could lift or carry, as well as postural limitations. The RFC assessments completed by the Disability Determination Program reviewing doctors limited Murillo's capacity for light work by restricting his ability to sit or stand during an eight-hour day and by restricting certain activities such as kneeling, bending, or crawling. These uncontradicted findings are incompatible with the ALJ's conclusion that Murillo could return to his former work as a packer in the plastics factory which required him to stand for the entire work day.

Notwithstanding Murillo's limitations, however, the record contains substantial evidence establishing that he could return to his past relevant work packing neckties. Although Murillo testified that he could not return to his former job packing neckties because he did not think he could sit or stand as much as was required for that job, the record does not support his belief. Murillo testified that the maximum weight he had to lift in that job was twelve to fifteen pounds. He described the work as requiring very little bending or reaching and allowing alternating sitting and standing. Even the most sympathetic medical evaluations of his RFC expect him to be able to lift the

13

weight and meet the sitting and standing requirements for the job as he described it.  Thus, I uphold the ALJ's ultimate conclusion at Step Four of the sequential analysis that Murillo could return to his past relevant work.

## CONCLUSION

For the foregoing reasons plaintiff's motion to reverse and remand (document no. 7) is denied and defendant's motion to affirm (document no. 8) is granted.  Defendant is directed to comply with the requirements stated in footnote four.

SO ORDERED.

_____
Paul Barbadoro
United States District Judge

May 4, 1995

cc:  Raymond Kelly, Esq.
     David Broderick, Esq.

14