Cheryl Hill v. SSA                    CV-97-321-B    08/20/98

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE


**Cheryl Hill**

    **v.**                                              C-97-321-B

**Kenneth S. Apfel, Commissioner**
**of the Social Security**
**Administration**[1]


### MEMORANDUM AND ORDER

Cheryl Hill challenges the decision of the Social Security Administration ("SSA") to reject her applications for Title II Social Security Disability Insurance benefits and for Title XVI Supplemental Security Income benefits. Hill has been treated for complaints related to lower-back pain since 1992. She contends that the Administrative Law Judge ("ALJ") who reviewed her case wrongly concluded that, despite a severe back impairment, she could perform her prior past work as a fragrance model and a general office clerk. Because I conclude that the Commissioner failed to properly evaluate Hill's subjective pain complaints, I remand the case to the Commissioner for further review.

---

[1] Pursuant to Fed. R. Civ. P. 43(c), Kenneth S. Apfel is substituted for John J. Callahan, former Acting Commissioner of Social Security, as the defendant in this action.

## I. <u>BACKGROUND</u>[2]

## A. <u>Hill's Medical History</u>

### 1. <u>Medial Evidence Presented to the ALJ</u>

Hill was thirty-two years old at the time of her hearings before the ALJ. She has a tenth-grade education and has received a graduate equivalency diploma. Hill has held a variety of positions, working as a copy clerk, office/house cleaner, grocery stocker, cashier, fragrance model and sales clerk, waitress, bartender, and campground manager.

On May 24, 1992, Hill fell from a stool on which she was sitting and subsequently began to complain of lower-back, hip, and leg pain. She has not worked since that date.[3] After a June 17, 1992 consultation, Dr. Garrett G. Gillespie noted that her MRI "doesn't show any marked herniation," although the MRI did show "mild degenerative changes." Due to complaints of pain, Hill began a regime of physical therapy in July 1992 and trigger-point injections in September 1992.

Continuing to complain of pain in her lower back, left

---

[2] Unless otherwise indicated, the facts are either undisputed or taken form the Joint Statement of Material Facts submitted by the parties.

[3] The record shows that throughout the summer of 1992, Hill was employed as a campground manager. She testified at the first ALJ hearing, however, that she spent most of that summer in bed while her nephew assumed nearly all of her duties.

buttock, and left leg, Hill visited Dr. B.V. Popovich in October 1992. Later that month, Dr. Popovich noted that Hill's condition had improved in that headaches from which she had been suffering ceased and that she had no pain in her upper back, legs, or calves. Dr. Popovich recommended that Hill continue with her trigger-point injection treatments.

In January 1993, Hill visited Dr. John T. Lynn and continued to complain of lower-back and leg pain. Dr. Lynn noted that an electromyography of her spine showed mild bulging with no sign of nerve-root impingement at L4-5 and sacralization[4] at L5. Dr. Lynn thought it unlikely that the sacralization could cause the level of pain she described. Unable to reconcile her condition with her symptoms, Dr. Lynn referred Hill to Dr. Price, whom she visited in February 1993.

Hill complained to Dr. Price of lower-back pain and pain and numbness in her buttocks and legs. Upon examination, Hill exhibited limited forward bending and tenderness in her lower back. Sacroiliac joint compression signs were predominantly negative, as were straight-leg raising and motor reflexes. Dr. Price noted that he did not believe that either the L5 sacralization or the possible L4-5 herniation were responsible

---

[4] "[A]nomalous fusion of the fifth lumbar vertebra to the first segment of the sacrum . . . ." Dorland's Illustrated Med. Dictionary, at 1478 (28th ed. 1994).

3

for Hill's pain complaints and, therefore, recommended against surgery. Because physical therapy had been unavailing, Dr. Price recommended a short course of bracing instead.

In May 1993, Hill visited Dr. John A. Savoy, who reviewed her MRI and CT scan results and concluded that they were normal. Dr. Savoy diagnosed chronic lumbosacral strain with a possible nerve root contusion and recommended a seven-day steroid-injection program.

In November 1993, plaintiff visited Dr. William E. Kois, a physiatrist.[5] Upon examination, Dr. Kois noted his belief that Hill's pain was most likely mechanical in nature, though possibly stemming from a degenerative disc or rheumatoid arthritis. In addition to ordering further testing, Dr. Kois referred Hill to Dr. John W. Knesevich for psychiatric evaluation and to Dr. Margaret Caudill for enrollment in a pain-control program. Dr. Knesevich diagnosed "features of major depression, single episode", but found no other disorders. In December 1993, Dr. Knesevich noted that Hill felt well after taking Prozac. Dr. Kois also noted later that month that Hill was making progress in physical therapy but was still in a fair amount of pain. As a result, Dr. Kois recommended that Hill start a swimming program.

_____

[5] The specialization in physical or rehabilitation medicine.

4

On Dr. Kois' referral, Hill visited Dr. Caudill in February 1994 for pain management. Hill began participating in Dr. Caudill's pain-management program, but soon dropped out because certain elements of the program, specifically, transcendental meditation, conflicted with her beliefs as a Jehovah's Witness. In April 1994, the range of motion in her back was still limited, although somewhat improved. Dr. Kois recommended that Hill begin to explore vocational options but indicated his belief that she was not yet ready to return even to part-time work.

In February 1995, Hill visited Dr. Martin A. Samuels upon Dr. Knesevich's referral. During the course of examination, Hill winced, displayed discomfort, and exhibited tenderness all over her back. Dr. Samuels noted no sign of spasm and noted that she displayed a full range of motion in her lower back. No reflex, sensory, or other motor abnormalities were found and her muscle strength appeared largely undiminished. Dr. Samuels did not feel that prior MRI and CT scan studies showed any neurological basis for the degree of her claimed disability. Additionally, Dr. Samuels noted his belief that no course of treatment would help Hill until the conclusion of all pending litigation arising from Hill's back problems.

2. Medical Evidence Presented to the Appeals Council

In May 1995, after Hill's hearing before the ALJ, she

visited Dr. Gillespie, who concluded that, based on her reported symptoms she, she likely had a ruptured lumbar disc. In October 1995, Dr. Gillespie reiterated his opinion that Hill remained unemployable due to a herniated disc at L4-5. A CT scan conducted in November 1995 showed mild bulging at L4-5 and possible spondylosis at L4. A myelogram revealed no definite abnormalities. Dr. Gillespie concluded that these studies showed no evidence of disc herniation or nerve root compression, though he felt that the possible spondylosis could have been caused by her fall in 1992. Dr. Gillespie recommended treatment by mild exercise, anti-inflammatory medication, weight reduction, and facet joint injection.

Additionally, in January 1996, Hill visited Dr. Colleen Guiry for treatment of possible urinary problems. In her report, Dr. Guiry noted Hill's long history of chronic lower-back pain and concluded that her pain was more likely due to her back problems than her urinary problems.

B. **Procedural History**

Hill initially applied for disability insurance benefits and Supplemental Security Income benefits in April 1993, alleging disability since 1992. After these applications were denied at the initial stage of review, she reapplied for disability

6

insurance benefits on March 23, 1994.[6]  This application was denied initially and upon reconsideration.  Hill then requested a hearing before an ALJ.  Hearings were held on March 3, 1995, and April 18, 1995.  At these hearings, the ALJ heard testimony from Hill, her husband, and a vocational expert.

By decision dated July 29, 1995, the ALJ denied Hill's applications for benefits at step four of the five-step sequential analysis.  Although he found she suffered from a severe impairment that imposed significant limitations on her ability to work, he concluded, upon consultation with the vocational expert, that Hill remained able to perform her past relevant work as a fragrance model and an office clerk.  Hill then requested that the Appeals Council review the ALJ's decision and submitted additional medical evidence in support of her request.  On April 27, 1997, the Appeals Council denied Hill's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security and subject to this appeal.  In that denial, the Appeals Council concluded that Hill's additional evidence did not provide a basis for questioning the ALJ's decision.

---

[6]  Hill filed a new protective application for Supplemental Security Income benefits in December 1994.

7

## II. <u>STANDARD OF REVIEW</u>

After a final determination by the Commissioner denying a claimant's application for benefits and upon a timely request by the claimant, this court is authorized to: (1) review the pleadings submitted by the parties and the transcript of the administrative record; and (2) enter a judgment affirming, modifying, or reversing the Commissioner's decision. <u>See</u> 42 U.S.C.A. § 405(g) (West Supp. 1998). The court's review is limited in scope, however, as the Commissioner's factual findings are conclusive if they are supported by substantial evidence. <u>See</u> <u>Irlanda Ortiz v. Secretary of Health and Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991); 42 U.S.C.A. § 405(g). The Commissioner is responsible for settling credibility issues, drawing inferences from the record evidence, and resolving conflicting evidence. <u>See</u> <u>Irlanda Ortiz</u>, 955 F.2d at 769. Therefore, the court must "'uphold the [Commissioner's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's] conclusion.'" <u>Id.</u> (quoting <u>Rodriguez v. Secretary of Health and Human Servs.</u>, 647 F.2d 218, 222 (1st Cir. 1981)).

If the Commissioner has misapplied the law or has failed to provide a fair hearing, however, deference to the Commissioner's

decision is not appropriate, and remand for further development of the record may be necessary.  See Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 644 (2d Cir. 1983); see also Slessinger v. Secretary of Health and Human Servs., 835 F.2d 937, 939 (1st Cir. 1987) ("The [Commissioner's] conclusions of law are reviewable by this court.")  I apply these standards in reviewing the issues plaintiff raises on appeal.

## III.  DISCUSSION

The ALJ concluded at the fourth step of the five-step sequential analysis[7] that Hill was not disabled because she retained the ability to perform a limited range of light exertional tasks, including those necessary to perform two of her previous jobs, namely, fragrance model and office clerk.  Hill's primary challenge to this conclusion is that the ALJ failed to

---

[7]  The ALJ is required to consider the following five steps when determining if a claimant is disabled:
    (1) whether the claimant is engaged in substantial gainful employment;
    (2) whether the claimant has a severe impairment that has lasted for twelve months or had a severe impairment for a period of twelve months in the past;
    (3) whether the impairment meets or equals a listed impairment;
    (4) whether the impairment prevents or prevented the claimant from performing past relevant work;
    (5) whether the impairment prevents or prevented the claimant from doing any other work.
See 20 C.F.R. §§ 404.1520, 416.920 (1997).

properly credit Hill's complaints of disabling pain.[8]

In determining whether a claimant has the residual functional capacity to perform her past relevant work, the ALJ must review the medical evidence regarding the claimant's physical limitations as well as her own descriptions of her physical limitations, including her subjective pain complaints. See Manso-Pizarro v. Secretary of Health & Human Servs., 76 F.3d 15, 17 (1st Cir. 1996). Where the claimant has shown that she suffers from an impairment that could reasonably be expected to produce the pain she alleges, the ALJ must take into consideration the claimant's subjective evaluation of her pain and the limitations that her pain imposes on her ability to work. See Avery v. Secretary of Health and Human Servs., 797 F.2d 19, 21 (1st Cir. 1986). However, the ALJ is not required to give credit to the claimant's subjective evaluations of pain if they are inconsistent with the medical findings that exist regarding her condition. See Dupuis v. Secretary of Health and Human Servs., 869 F.2d 622, 623 (1st Cir. 1989). Rather, after making specific findings detailing the inconsistencies between the

_____

[8] Hill also argues that the ALJ failed to give controlling weight to the opinion of Dr. Gillespie, Hill's treating physician. As I conclude that a remand is warranted on other grounds, I do not address the merits of this argument. On remand, the ALJ should consider this evidence, affording it whatever degree of weight the regulations mandate.

10

claimant's allegations of pain and the objective medical findings, the ALJ may discount the allegations in determining the claimant's RFC.  See Avery, 797 F.2d at 21.

Although the ALJ found that Hill suffers from the severe impairments of fibromyaglia and chronic lumbosacral strain, he rejected her contention that the pain produced by these conditions was so severe as to be disabling.  Instead, he concluded that while Hill "can perform only limited sitting and standing because of her chronic back pain -- about 30 minutes at a time --and cannot perform repetitive bending," her condition permitted her to engage in a range of light-duty work, including her past work as a fragrance model and office clerk.  The ALJ based his decision on two findings.  First, he found that the objective medical evidence did not substantiate the level of pain Hill alleged.  Second, he found that Hill's description of her activities of daily living directly contradicted the severity of her pain complaints.

An ALJ is not free to disregard a claiming's subjective pain complaints merely because they cannot be corroborated by objective medical evidence.  SSR 96-7p; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).  Rather, because "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone," the ALJ must consider

11

other evidence before determining whether the claimant's subjective complaints of pain are credible. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Specifically, the ALJ must consider: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of the pain; (3) the precipitating and aggravating factors; (4) the type, dosage, effectiveness, and adverse side-effects of any pain medications; (5) non-medication forms of treatment for relief of pain; (6) any functional restrictions; and (7) any other relevant factors. Id.; see also Avery, 797 F.2d at 29.

In this case, the ALJ looked only at evidence of Hill's daily activities, to the virtual exclusion of all other factors. The ALJ found that her pain complaints were "contradicted to a substantial degree" by Hill's daily activity report, which he found to include "going to medical appointments four to five days per week, cooking once per week, going shopping with her husband for groceries, watching television and reading." In his evaluation, however, the ALJ completely misconstrued the evidence regarding Hill's daily activities.

First, the ALJ neglects to note that Hill testified that her husband has to drive her to her medical appointments. Also, it is counter-intuitive to conclude, as the ALJ did in this case, that having to attend frequent doctors' appointments negates

12

rather than substantiates a claimant's allegations of pain. Second, although Hill states that she can still cook despite her impairment, she only does so once per week and testified that the effort usually renders her incapacitated. Third, while Hill admits that she occasionally grocery shops with her husband, she also states that he must drive her to the store, that she frequently uses a wheel chair or electric cart to get around the store, and that when she does walk, she is exhausted after thirty minutes. Finally, that Hill is capable of watching television and reading does not contradict her statement that her pain is so severe that she must frequently lie down. Rather, a person may stand, sit, or lie down while reading or watching television.

Additionally, the ALJ overlooked evidence potentially relevant to several other factors. With respect to medication, for example, the record is replete with references of different medications prescribed to alleviate Hill's pain, such as Dolobid, Cyclobenzaprene, Lodine, Tylenol with Codeine, Relafin, Xanax, and Amithriptyline, that were all unsuccessful. See 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv) (In making credibility determination, ALJ should consider the "type, dosage, effectiveness, and side effects of any medication" claimant has taken.). With respect to non-medication treatment, the record reflects that Hill has been treated with physical therapy,

13

trigger point injections, steroids, bracing, and various forms of exercise, all without avail.  See id. §§ 404.1529(c)(3)(v), 416.929(c)(3)(v) (In making credibility determination, ALJ should consider "[t]reatment, other than medication" that the claimant has received for pain relief.).  Because the ALJ ignored most of the factors he was charged with applying, and clearly misapplied the one factor that he did consider, I find that his decision to discredit Hill's allegations of pain is not supported by substantial evidence.  See DaRosa v. Secretary of Health and Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (remand appropriate where ALJ's credibility determination not supported by substantial evidence because ALJ failed to consider requisite factors).  Accordingly, the case must be remanded to permit the ALJ to properly evaluate the significance of Hill's pain complaints.

## IV.  CONCLUSION

For the foregoing reasons, Hill's motion to reverse the Commissioner's decision is granted in part and defendant's motion to affirm the Commissioner's decision is denied.  The case is remanded pursuant to sentence four of 42 U.S.C.A. § 405(g) for further consideration in a manner consistent with this order.

SO ORDERED.

14

_____
Paul Barbadoro
Chief Judge

August 20, 1998
cc:  Elizabeth Bailey, Esq.
     David Broderick, Esq.