Tardnugo v. SSA                          CV-95-144-B    02/27/96

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Mark A. Tardugno

     v.                                    Civil No. 95-144-B

Shirley S. Chater, Commissioner
of the Social Security Administration



                         **O R D E R**

     Mark Tardugno challenges the decision of the Commissioner of

the Social Security Administration denying him disability

insurance benefits.  He contends that the Administrative Law

Judge ("ALJ") failed to adequately consider the severity of his

pain and the extent of his impairment and erroneously concluded

that he was not disabled.  Because I find substantial evidence in

the record to support the ALJ's decision, I affirm.



                    I.   **BACKGROUND**[1]

     Tardugno was injured at work on March 26, 1992, when he fell

down concrete stairs while delivering a dolly loaded with milk to

_____

        [1]  The facts are taken from the parties' joint stipulation
of facts.  Neither party has filed disputed facts.

a restaurant.  At the time of the accident, he was thirty-seven years old and had an eighth grade education.  He has not returned to work since the accident.

He was treated for back and rib pain on the day of the accident at Concord Hospital where he was diagnosed with abrasions and contusions to his back and chest but his x-rays of the ribs and spine were normal.  The next day he began treatment with Dr. David M. McCarthy, a chiropractor, who treated him three or four times a week with massage and pool therapy for the next two years.  Dr. McCarthy provided certificates indicating total incapacitation on March 30, 1992, April 2, 1992, June 8, 1993, and May 12, 1994.  He noted in July 1992 that Tardugno might be able to return to some form of part time work.

On April 1, 1992, Tardugno was examined by Dr. John Thomas, a doctor of physical medicine and rehabilitation, on the recommendation of Dr. McCarthy.  Dr. Thomas noted that Tardugno suffered two injuries at work, first on August 30, 1991, when he felt a pull and pain in his right shoulder, neck, and upper back, but was able to return to work, and the second injury in March. His examination showed that Tardugno had some limitation in the range of motion in his right shoulder and hips, and substantial limitation in the lower back, but that the remainder of the tests

2

showed ranges of motion within acceptable limits. His sensation, reflexes, strength, balance, coordination, and ambulation were all intact. He was able to perform straight leg raises in the sitting position to ninety degrees, and when lying down, to forty degrees on the left and to fifty degrees on the right sides. Dr. Thomas noted that Tardugno had tenderness and specific sore spots in his back but no signs of disease. He diagnosed skeletal malalignment on the left side with discrepancy in the left leg rotation and length. He also found a muscle injury pattern on the right side of his back and shoulder. He found the injury to be greater on the left side of the buttocks than the right. Dr. Thomas concluded that Tardugno would be out of work for at least four to six weeks. He recommended muscle relaxants and physical therapy.

Dr. Thomas examined Tardugno again in August 1992 and reviewed the results of an MRI test done on April 9, 1992, that showed a small central and right sided L5-S1 intervertebral disc herniation. Dr. Thomas noted that Tardugno remained acutely stiff and tense and again recommended muscle relaxant medication. He reported his progress as positive although slow. He also noted that Tardugno's employer offered light duty sedentary work that would allow him to change position as needed and suggested

3

that he consider beginning on a part time basis and work toward full time.

At the request of his insurance company, Tardugno was examined on October 20, 1992, by Dr. Daniel Sullivan, an orthopedic chiropractor. Dr. Sullivan found that he had tenderness and severely restricted range of motion in his dorsolumbar back. At that time, Tardugno was able to toe walk but not heel walk. His gait and ability to seat himself were slow but unremarkable, and his reflexes were normal. Dr. Sullivan diagnosed extensive and chronic signs of paraspinal fibromyalgia syndrome, a group of common rheumatic disorders characterized by achy pain, and tenderness and stiffness of muscles. He also concluded that Tardugno had developed progressive neurological deficits. His opinion was that Tardugno could not return to his previous work and had no present work capacity even on a part-time basis.

Tardugno was next examined on November 4, 1992, by Dr. Anthony A. Salerni, a surgical neurologist. Dr. Sullivan also found a very limited range of motion in his back due to pain, and found that his reflexes and motor power were normal. Dr. Salerni determined that Tardugno did not have neurological deficits or myelopathy--disturbances or functional changes in the spinal

4

cord.  He did note an odd sensory deficit that he could not explain.  He diagnosed Tardugno's pain as the result of a soft tissue injury.

On November 11, 1992, Tardugno was examined by Dr. John Grobman, an orthopedist, and on November 18 and December 15, by Dr. Levy, an orthopedic back specialist.  Both Dr. Grobman and Dr. Levy found that Tardugno's neurological signs were relatively normal, that he was experiencing significant back pain, and a limited range of motion.  Dr. Levy concluded that the pain was due to a ligament injury rather than the disc problem indicated on the MRI.

Tardugno visited Concord Hospital's emergency room on December 17 complaining of back pain, urinary and bowel incontinence and blood in his stool.  The examining doctors found some lower back tenderness and normal motor and neurological results.  The myelogram was negative, and Tardugno was diagnosed with back pain with a possible nerve root syndrome.

An independent examination by another chiropractor, James P. Geary, in March 1993 reported that his gait was guarded, his range of motion in his back was severely restricted and painful. Geary found that Tardugno's reflexes were somewhat decreased and that he could heel and toe walk with pain.  In his opinion,

Tardugno's pain was caused by myofascial pain syndrome.

Tardugno was next treated by Dr. Ralph Beasley on March 31 on the recommendation of Dr. McCarthy for pain management. The physical examination provided similar results as were found previously with straight leg testing to thirty degrees. Dr. Beasley diagnosed a bulging L5-S1 disc with back pain in the lumbar region and sciatica. He could not determine the cause of the pain but suggested that the causes could include back problems, myofascial pain, and pelvis problems. He recommended some further diagnostic testing. and prescribed a pain treatment program with medication. In May, Tardugno returned to Dr. Beasley to begin his regimen for pain treatment including medications and injections.

On May 6, 1993, Dr. Green examined Tardugno for episodes of bladder incontinence. An entire urodynmaic evaluation was performed. After reviewing the test results, Dr. Green decided that Tardugno had muscle motor and sensory instabilities in the bladder. In his opinion, the bladder condition was not related to Tardugno's back injury. Dr. Green prescribed medication for relief of his bladder instability. Dr. Alan Sheinbaum also examined Tardugno in May for complaints of rectal bleeding that was determined to be caused by hemorrhoids.

6

A state agency doctor made an assessment of Tardugno's residual functional capacity ("RFC") on May 19, 1993, based on the medical record but not a physical examination.  The doctor determined that Tardugno could lift up to ten pounds, sit for six hours, and stand and walk for two hours in a day.  No other limitations were noted.  The doctor found that Tardugno had a sedentary work capacity and advised vocational rehabilitation.  The RFC was affirmed in August.

Tardugno began a course of several treatments and diagnostic tests on June 2 when he underwent electro-neurodiagnostic testing of his legs.  The test results indicated radiculopathy, a disorder of the spinal nerves and nerve roots at L5 and S1.  On June 3, Dr. Beasley administered a lumbar epidural steroid injection and noted that Tardugno's physical findings were unchanged.  An MRI of Tardugno's entire back was scheduled for June 17, but he could only tolerate the portion of the procedure for his lumbar spine because of back pain.  The MRI showed no change from April 1992 and Tardugno's small disc herniation was found to be stable.  He received a second injection on June 22.  An MRI of Tardugno's thoracic spine was done on July 1, with unremarkable results, but he could not tolerate the portion for the cervical spine.

7

Dr. Salerni saw Tardugno again in August with essentially unchanged clinical findings, and he referred him to Dr. Davis Clark, an orthopedic surgeon. Dr. Clark made similar clinical findings and diagnosed chronic low back and radicular pain without being able to identify the cause. He recommended further diagnostic testing, and if negative, he advised a functional restoration program with vocational rehabilitation counselling.

Dr. Thomas Kleeman conducted an independent evaluation of Tardugno on October 27, 1993. His physical findings were similar to previous examinations but finding a more limited degree of leg raising and slightly decreased sensation in his right leg. Upon review of x-rays of the lumbosacral spine and the previous MRI results, Dr. Kleeman noted a narrowing at L5-S1 with degeneration and mild degeneration at L2-L3, and a very slight disc protrusion that did not appear to affect the nerve roots at L5-S1. Dr. Kleeman diagnosed "disc degeneration with symptoms out of proportion to objective findings" and assessed Tardugno's permanent impairment to be fourteen percent of the whole person. He noted that Tardugno's impairment would be thirty-one percent including his motion limitation, but his range of motion failed the validity test. Dr. Kleeman noted Tardugno's large weight gain since his injury, lack of progress in resolving his pain,

8

and that previous examiners had recommended psychosocial evaluation or counselling, which had not been done.

Tardugno was also evaluated by a physical therapist on the same day at Dr. Kleeman's request. She noted that Tardugno did not give a good effort at the testing so that the results indicated only his minimal work ability. She estimated that he would be capable of light duty work. She also "strongly recommended" that Tardugno begin an exercise program along with pain management.

Tardugno was examined by another orthopedist, Dr. Fulton Kornack, in December 1993, and again in March 1994. His findings were essentially the same as those of previous examinations. His opinion was that Tardugno's pain resulted from a soft tissue injury, not from a disc problem. He recommended rehabilitation and pain management.

On March 8, 1994, Dr. McCarthy, Tardugno's chiropractor, completed a general medical report on him. He concluded that Tardugno could lift as much as ten to fifteen pounds, could occasionally climb, but could not balance, stoop, crouch, kneel, crawl, reach, or push and pull. He recommended avoiding moving machinery, temperature extremes, humidity, and vibration. He did not determine his ability to sit or stand.

9

Tardugno applied for disability insurance benefits on March 18, 1993. He alleged an inability to work since March 28, 1992, due to a back condition and bowel and bladder incontinence. He appeared, represented by counsel, and testified at the hearing held on June 14, 1994. He testified that he had worked driving a delivery truck, repairing cars, as a meat cutter, and he had owned his own restaurant. At the time of the hearing, he was thirty-nine years old, married, and had two children.

As to his current abilities, Tardugno testified that he could sit for about one-half hour, could walk one-half mile, had difficulty standing for any length of time, and had to lie down on his side for twenty to thirty minutes at least a couple of times each day. He also claimed difficulty performing activities at or above shoulder level with his right arm. Tardugno also testified that he was able to drive for short distances, to shop with his wife, and that his concentration and memory were not affected by pain.

The vocational expert, John Bopp, gave his opinion that based on the hearing testimony Tardugno was not able to return to any of his prior work. The ALJ described a hypothetical individual without a high school education, but able to read, write, add and subtract, and who has performed jobs in the

10

semiskilled area, but whose exertional requirements were limited to lifting not more than twenty pounds, no climbing, no bending at the waist, and no repetitive overhead reaching. He also required a job which allowed a change of position so that the worker would not sit or stand without a change of position for more than a half and hour to an hour. Mr. Bopp testified that positions that would fill the ALJ's described criteria would be cashiers, bookkeeping and auditing clerks, stock and inventory control clerks, assembler jobs, production inspectors, checkers, and examiners.

In his decision issued on August 2, 1994, the ALJ determined that Tardugno was not able to return to his prior work, but that his testimony as to his pain was not entirely credible. He found that Tardugno was able to do the full range of light work reduced by his pain limitation. He also found that Tardugno was not disabled because he was able to perform jobs that existed in significant numbers in the national economy. Thus, he denied Tardugno's application for benefits. The Appeals Council denied his request for review[2] on January 17, 1995, and Tardugno filed

---

[2] Because the Appeals Council declined to review the ALJ's decision, only the administrative record presented to the ALJ, not additional evidence submitted to the Appeals Council, is

11

his appeal with this court.


## II. <u>STANDARD OF REVIEW</u>

After a final determination by the Commissioner and upon request by a party, this court is authorized to review the pleadings and the transcript of the record of the proceeding, and enter a judgment affirming, modifying, or reversing the decision. 42 U.S.C.A. § 405(g) (West Supp. 1995). The court's review is limited in scope, however, as the Commissioner's factual findings are conclusive if they are supported by substantial evidence. <u>Id.</u>; <u>Ortiz v. Secretary of Health & Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991). The Commissioner is responsible for settling credibility issues, drawing inferences from the record evidence, and resolving conflicting evidence. <u>Id.</u> Therefore, the court must "'uphold the [Commissioner's] findings . . . if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support [the Commissioner's]

_____

reviewable here. <u>See</u> <u>Eads v. Secretary of DHHS</u>, 983 F.2d 815, 816-17 (7th Cir. 1993). In addition, I note that Tardugno does not contend that the evidence presented only to the Appeals Council qualifies as "new evidence" that would entitle him to have the ALJ consider the evidence on remand. <u>See</u> <u>Evangelista v. Secretary of Health and Human Servs.</u>, 826 F.2d 136, 139 (1st Cir. 1987).

12

conclusion.'" Id. (quoting Rodriguez v. Secretary of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981). However, if the Commissioner has misapplied the law or has failed to provide a fair hearing, deference to the Commissioner's decision is not appropriate, and remand for further development of the record may be necessary. Carroll v. Secretary of Health & Human Servs., 705 F.2d 638, 644 (2d Cir. 1983). See also Slessinger v. Secretary of Health & Human Servs., 835 F.2d 937, 939 (1st Cir. 1987). I review Tardugno's appeal in light of the applicable standard.

## III. **DISCUSSION**

On appeal, Tardugno challenges the ALJ's determination at the fifth step[3] of the sequential analysis that he was capable of

---

[3] The ALJ is required to consider the following five steps when determining if a claimant is disabled:
(1) whether the claimant is engaged in substantial gainful activity at the time of the claim;
(2) whether the claimant has a severe impairment that has lasted for twelve months or had a severe impairment for a period of twelve months in the past;
(3) whether the impairment meets or equals a listed impairment;
(4) whether the impairment prevents or prevented the claimant from performing past relevant work;
(5) whether the impairment prevents or prevented the claimant from doing any other work.
See 20 C.F.R. § 404.1520 (1994); 20 C.F.R. § 404.1509 (1994).

13

performing light duty work and, therefore, was not disabled. In particular, he disputes the ALJ's conclusion that his subjective complaints of disabling pain were not credible, and he argues that the evidence in the record does not support the ALJ's findings.

At step five, the Commissioner has the burden of showing that despite the severity of the claimant's impairment and inability to return to past relevant work, he retains the RFC to perform other occupations that exist in significant numbers in the national economy and in the region where he lives. 20 C.F.R. § 404.1520(f); Keating v. Secretary of Health & Human Servs., 848 F.2d 271, 276 (1st Cir. 1988). A claimant's residual functional capacity is "what he can still do despite his limitations." 20 C.F.R. § 404.1545(a).

Tardugno claims that his back pain is so severe that he must lie down for twenty to thirty minutes several times a day to relieve pain, but only his subjective complaints of pain support his need to lie down. The vocational expert testified that with that limitation there would not be jobs available that he could do. Tardugno argues that therefore disabled and disputes the ALJ's evaluation of his complaints of pain.

Subjective complaints of pain are evaluated in light of all

14

of the evidence and must be supported by medical signs and findings. 42 U.S.C.A. § 423(d)(5)(A) (West Supp. 1995); 20 C.F.R. §§ 404.1529(c); Avery v. Secretary of Health & Human Servs., 797 F.2d 19, 23 (1st Cir. 1986). In determining the weight to be given to a claimant's allegations of pain, "complaints of pain need not be precisely corroborated by objective findings, but they must be consistent with medical findings." Dupuis v. Secretary of Health & Human Servs., 869 F.2d 622, 623 (1st Cir. 1989). When the claimant's reported symptoms of pain are significantly greater than the objective medical findings suggest, the ALJ must consider other relevant information to evaluate the claims including the claimant's daily activities, the specific manifestations of pain, precipitating and aggravating factors, and the availability of effective means of relieving pain through medications or treatments. 20 C.F.R. § 404.1529(c)(3); Avery, 797 F.2d at 23. If the ALJ has considered all of the relevant evidence of the claimant's pain, "[t]he credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings." Frustaglia v. Secretary of Health & Human Servs., 829 F.2d 192, 195 (1st Cir.

15

1987).

In his written decision, the ALJ reviewed Tardugno's extensive medical records and determined that his allegations of pain were in excess of what would be reasonably expected from the objective medical evidence.  The medical records of Tardugno's treating doctors support the ALJ's determination.  The records show that Tardugno had injury to his back including a small disc herniation at L5-S1 and disc degeneration there and in some other areas.  Upon examination, the doctors repeatedly found that Tardugno's complaints of pain were unrelated to his disc condition and were more likely the result of an undetermined soft tissue or a ligament injury.  Dr. Green decided that Tardugno's bladder incontinence, which was controlled by medication, was unrelated to his back condition.  Although Dr. Sullivan, a chiropractor, found that Tardugno was disabled from all work in October 1992, an evaluation of Tardugno's RFC in May 1993 shows that he was capable of light duty work with some restrictions.  By October 1993 Dr. Kleeman, an orthopedist, and a physical therapist determined that Tardugno's pain complaints and other symptoms were out of proportion to his objective medical findings and that he was capable of light or sedentary work and that his impairment limited his activity by only fourteen percent.

16

Although Tardugno's treating chiropractor, Dr. McCarthy, gave his opinion in June 1993 and May 1994 that Tardugno was totally disabled due to a "disc syndrome," his opinion merits controlling weight only if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case." 20 C.F.R. § 404.1527(d)(2) (1994). The opinions of other doctors who examined and tested Tardugno contradict Dr. McCarthy's opinion. Other examining doctors ruled out Tardugno's disc condition as the cause of his pain complaints and found that the medical evidence of physical condition did not explain his pain. While Dr. Kleeman stated in February 1994 that manipulation treatment was not justified for his condition and chiropractic treatment had proved to be of no benefit, in June 1994 Dr. McCarthy was continuing to treat Tardugno up to three times per week and recommended "manipulation under anesthesia." Based on the record, Dr. McCarthy's treatment is not well-supported and his opinion of total disability is contradicted by other examining physicians. Because Dr. McCarthy's opinion is not entitled to controlling weight, and "the resolution of conflicts in the evidence is for the Secretary, not the courts."

17

Ortiz, 955 F.2d at 769. Therefore, the ALJ was entitled to give more weight to opinions other than that of Dr. McCarthy.

Next, following the Avery requirements, having determined that Tardugno's complaints of pain exceeded normal expectations based on the objective medical evidence, the ALJ was obligated to consider any other evidence in the record concerning the effect of pain on Tardugno's daily activities. Tardugno testified, and the ALJ noted in his decision, that he was limited by pain in his daily activities but was able to drive his children to and from school and to his own doctors' appointments, take care of himself, visit with friends, and help his wife around the house.

Tardugno also testified that the only medication he was using then to control his pain was Tylenol with Codeine taken occasionally. He explained that he did not take Tylenol every day because it causes constipation. The medical record shows that he had previously taken prescribed medications and Tylenol with Codeine beginning in June 1993 and initially received some relief for sleeping. Because medications and treatment were prescribed to control pain, his failure to use those medications to alleviate pain, or to explain why he does not follow the

18

prescribed treatment, contradicts his allegations of disabling pain. See Tsarelka v. Secretary of Health and Human Servs., 842 F.2d 529, 534 (1st Cir. 1988) ("If a claimant does not follow prescribed treatment 'without a good reason,' he or she will not be found to be disabled." (quoting 20 C.F.R. § 404.1530)).

The ALJ properly considered the Avery criteria in partially discounting Tardugno's subjective pain complaints. Based on the record evidence, the ALJ's determination that Tardugno suffered back pain but that his pain was not "of disabling proportions" is supported by substantial evidence. Thus, the ALJ did not erroneously discount Tardugno's impairment due to pain in describing his hypothetical to the vocational expert, and substantial evidence supports the determination that Tardugno is not disabled from work. I affirm the Commissioner's decision denying benefits.

## IV.  **CONCLUSION**

For the foregoing reasons, the plaintiff's motion to reverse (document no. 6) is denied and defendant's motion to affirm

19

(document no. 8) is granted.

SO ORDERED.


_____
Paul Barbadoro
United States District Judge


February 27, 1996

cc:   James Lafrance, Esq.
      David Broderick, Esq.