Bruce Menezes v. SSA                    CV-99-168-B    05/04/00

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE


**BRUCE W. MENEZES**

    **v.**                                      Civil No. 99-168-B
                                            Opinion No. 2000 DNH 107

**KENNETH S. APFEL, Commissioner,**
**Social Security Administration**


### MEMORANDUM AND ORDER


Bruce W. Menezes applied for Title II Social Security

Disability Income benefits on September 26, 1996, alleging

disability since November 1, 1991.  After the Social Security

Administration ("SSA") denied Menezes's application, he requested

a hearing before an Administrative Law Judge ("ALJ").  ALJ Robert

S. Klingebiel held a hearing on Menezes's claim on March 25,

1997.  In a decision dated May 24, 1997, the ALJ found that

Menezes was "not disabled" at any time prior to the expiration of

his insured status on December 31, 1991.  On February 26, 1999,

the Appeals Council denied Menezes's request for review,

rendering the ALJ's decision the final decision of the Commissioner of the SSA.

Menezes brings this action pursuant to § 405(g) of the Social Security Act (the "Act"), see 42 U.S.C. § 405(g) (1994), seeking review of the denial of his claim for benefits. For the reasons set forth below, I conclude that the ALJ's decision that Menezes was not entitled to benefits was supported by substantial evidence. Therefore, I affirm the Commissioner's decision and deny Menezes's motion to reverse.

## I. FACTS[1]

Bruce W. Menezes was 37 years old when he applied for benefits. He has a twelfth-grade education and speaks English. Between 1977 and 1986, Menezes worked as a circuit board cutter. At various times between 1986 and 1991, he worked in roofing, general construction, and general property maintenance. See R.

---

[1] Unless otherwise noted, the following facts are taken from the Joint Statement of Material Facts (Doc. #9) submitted by the parties.

at 73, 96, 98, 538-39, 581-82.[2]

On November 1, 1991, Menezes was injured at work when he was struck by a crane and knocked from the back of a truck. See id. at 587. In addition to being knocked unconscious, Menezes suffered injuries to his back, left ankle, and left thumb. He went directly to St. Joseph's Hospital in Lowell, Massachusetts. X-rays of his skull and left ankle were negative, whereas x-rays of his left thumb showed a comminuted[3] fracture with angulation of the fragments at the fracture site in the mid-shaft of the metacarpal bone.

The next day, Menezes was examined by Dr. Lawrence Johnson. During the examination, Menezes walked with a normal gait and stated that his left ankle pain was improving. Menezes's ankle had a full range of motion, was "minimally tender [and] minimally swollen," and was stable to ligament examination. Regarding

---

[2]    "R." refers to the official record submitted to the Court by the SSA in connection with this case.

[3]    Comminuted means "[b]roken into several pieces." Stedman's Medical Dictionary 333 (25th ed. 1990).

-3-

Menezes's fractured thumb, Dr. Johnson recommended open reduction and internal fixation. On November 3, 1991, Dr. Johnson performed a surgical procedure on the thumb. Menezes's thumb was in a cast for eight weeks, at the end of which Dr. Johnson noted that it was "minimally tender" and somewhat stiff, but was doing well overall. Menezes reported that after the operation and recovery period, his left thumb had "healed up pretty good."

On December 3, 1991, Menezes returned to the emergency room at St. Joseph's Hospital complaining of pain in his lower back and right hip. He reported that he had experienced these pains since the November 1 accident and that they were getting worse. X-rays taken of Menezes's lumbar spine were unremarkable. On December 10, 1991, Menezes underwent magnetic resonance imaging ("MRI") of his lumbar spine. The MRI showed disc degeneration with central disc bulging at the L3-4 and L4-5 levels and large right-sided disc herniation at L5-S1 that indented and displaced the dural sac with significant foraminal[4] encroachment. On

_____

[4] A foramen (pl. foramina) is "an aperture or perforation through a bone or a membraneous structure." Stedman's Medical

-4-

December 17, 1991, Dr. Johnson examined Menezes, who complained

of pain radiating down his right leg to his toes.  The

examination revealed that Menezes had a moderately antalgic gait[5]

with a list to the left and a positive Lasegue's sign[6] on the

right.  The result of a straight leg raising test ("SLR")[7] was

positive on the right at 60 degrees.  As a result of this

examination, Dr. Johnson and Menezes decided that the herniated

Dictionary 605 (25th ed. 1990).

    [5]    An antalgic gait is "a characteristic [gait] resulting from pain on weightbearing in which the stance phase of [gait] is shortened on the affected side."  Stedman's Medical Dictionary 627 (25th ed. 1990).

    [6]    Lasegue's sign is positive and indicates lumbar root or sciatic nerve irritation when the patient, in a supine position with his hip flexed, experiences pain or muscle spasm in the posterior thigh upon dorsiflexion of the ankle.  See Stedman's Medical Dictionary 1420 (25th ed. 1990).

    [7]    "The simple straight-leg raising test [SLR] is performed with the patient lying supine, with the backs of the knees flat on the examining table.  The knee is held straight, and the foot of one leg is raised while the hip is slowly flexed. Flexion of the leg through a range of 60 to 90 degrees is considered to be normal.  The test is positive when pain is reproduced down the posterior thigh below the knee between the angle of 30 to 70 degrees."  Attorneys' Textbook of Medicine ¶ 15.34(1) (3d ed. 1999).

disc should be excised.

On December 23, 1991, Menezes reported to Dr. Johnson that he had pain in his right buttock and thigh radiating down to his calf. By December 31, 1991, Menezes had a more significant limp, his SLR was more prominent at 60 degrees, and he exhibited pain with turning on the examining table. Dr. Johnson concluded that a discectomy[8] would be required if Menezes's symptoms persisted.

On January 7, 1992, Menenzes's electromyogram[9] and nerve conduction studies indicated a right S1 radiculopathy.[10] On January 15, 1992, Dr. Bruce R. Cook determined that, based on Menezes's history, physical examination, electrodiagnostic

---

[8] A discectomy is the "excision, in part or whole, of an intervertebral disk." Stedman's Medical Dictionary 442-43 (25th ed. 1990).

[9] An electromyogram is "[a] graphic representation of the electric currents associated with muscular action." Stedman's Medical Dictionary 497 (25th ed. 1990).

[10] Radiculopathy is a "[d]isease of the spinal nerve roots." Stedman's Medical Dictionary 1308 (25th ed. 1990).

studies, and imaging studies, Menezes needed a laminectomy[11] and disc excision.

A note in Menezes's chart, dated January 21, 1992, showed that he canceled the proposed surgery with Dr. Johnson after receiving a second opinion that surgery was not needed. In response, Dr. Johnson noted that he had "found in recent weeks that [Menezes's] symptoms waxed and waned and, certainly, if he is not feeling very symptomatic, it is appropriate to hold off on surgery." R. at 184. Notwithstanding the "second opinion," on January 23, 1992, Dr. Cook performed a lumbar hemilaminectomy[12] and disc excision upon Menezes. During the operation a sizeable free fragment and several small pieces of fibrocartilaginous[13]

---

[11] A laminectomy is an "excision of a vertebral lamina [flattened portion of a vertebra]." Stedman's Medical Dictionary 839 (25th ed. 1990).

[12] A hemilaminectomy is a type of laminectomy where access to the disc is achieved "by cutting away one or both sides of the of the bony structures at the level of the lesion." Attorneys' Textbook of Medicine ¶ 15.74 (3d ed. 1999).

[13] Fibrocartilage refers to "a variety of cartilage that contains visible collagen fibers." Stedman's Medical Dictionary 581 (25th ed. 1990).

tissue were removed from under the nerve root.  See id. at 213-14.  After the surgery, Menezes's leg pain improved.  He was discharged from the hospital on January 26, 1992.

When Menezes was examined by Dr. Cook on February 3, 1992, his station and gait were "mildly antalgic" and he was still having "a little bit of proximal pain in the hip and soreness in the back."  Dr. Cook noted, however, that Menezes showed a "marked improvement" in his leg symptoms.  By March 16, 1992, Dr. Cook reported that Menezes was free of all back and leg pain and was "doing very nicely."  Except for some left ankle difficulties (discussed below), Menezes was enjoying "full activities."  Dr. Cook noted that Menezes's right ankle jerk had returned, that he had good strength and mobility, and that his SLR was negative beyond 90 degrees.

On February 15, 1992, Menezes's left ankle was examined by Dr. David C. Morley, an orthopedic surgeon.  Menezes informed Dr. Morley that he had been experiencing problems with his ankle such as pain, giving way, limping, and loss of activities ever since

the accident on November 1, 1991.  See id. at 260.  The x-rays showed marked anterior instability and 28 degrees lateral opening to varus[14] stress films.  Dr. Cook recommended reconstructive surgery and performed such a procedure on Menezes's left ankle on April 6, 1992.  After the surgery, Menezes was placed in a short leg cast and he began physical therapy.  He was discharged on April 12, 1992.  At the time of discharge, Menezes was relegated to walking with a crutch, was able to achieve regular elevation of the left leg, and was prescribed Percocet for pain.  See id. at 313.

On the day he was discharged, Menezes fell down some stairs and injured his back.  On April 15, 1992, he was again examined by Dr. Cook.  The x-rays of Menezes's lumbar spine were essentially negative with minimal spondylolysis.[15]  Dr. Cook

---

[14]    Varus means "[b]ent or twisted inward toward the midline of the limb or body."  Stedman's Medical Dictionary 1689 (25th ed. 1990).

[15]    Spondylolysis is the "[d]egeneration of the articulating part of a vertebra."  Stedman's Medical Dictionary 1456 (25th ed. 1990).

diagnosed Menezes as suffering from a soft tissue contusion and sacroiliitis,[16] and prescribed anti-inflammatory medication and physical therapy.

On March 8, 1993, Dr. Morley reported that there had been full restoration of motion in Menezes's ankles,[17] but that subtalar motion[18] was about half of normal. Dr. Morley opined that considering the length of the scars left from surgery and the decreased range of motion, Menezes had an eight percent permanent partial physical disability with respect to each ankle. He suggested that Menezes avoid occupations that require significant standing or walking and that he be retrained in a

---

[16]     Sacroiliitis is the "[i]nflammation of the sacroiliac joint." Stedman's Medical Dictionary 1377 (25th ed. 1990).

[17]     There is evidence in the record regarding an injury to Menezes's right ankle which he sustained in early April 1992. See R. at 434. However, because this injury occurred after the expiration of Menezes's insured status, it is irrelevant to his disability determination.

[18]     Subtalar motion involves extension of the ankle and lowering the talus bone in the foot which articulates with the tibia and fibia in forming the ankle. See Dorland's Illustrated Medical Dictionary 1598, 1657, 1658 (28th ed. 1994).

more sedentary occupation.

In January 1995, Dr. Cook reported that Menezes's January 1992 laminectomy had relieved his leg pain, but that he still had "occasional back pain that is associated with lifting or activity." Dr. Cook also reported that Menezes did not notice any weakness or numbness in his leg and was not taking any medication for his back. Menezes could bend to 90 degrees, his reflexes were symmetric, his strength was full throughout, his SLR status was negative, and he had no sensory loss. Dr. Cook opined that Menezes would continue to be limited in his ability to do any lifting or repetitive activity.

In October 1995, Menezes reinjured his back while changing a flat tire on his car. As a result of this injury, Menezes required another laminectomy, which was performed by Dr. Cook on December 19, 1995.

On December 21, 1995, Menezes was transferred to Northeast Rehabilitation Hospital in Salem, New Hampshire for comprehensive rehabilitation following his second lumbar disc surgery. See id.

-11-

at 532-34.  When he arrived at the hospital, Menezes complained of severe pain and was given narcotic analgesics.  Within a few hours, he improved, was medically stable, and was allowed to go home with therapy continued on a outpatient basis.

On June 17, 1996, Dr. Richard N. Warnock submitted a medical opinion regarding Menezes's condition to the Department of Industrial Accidents for the Commonwealth of Massachusetts.  Dr. Warnock reported that Menezes experienced right side lower back pain without radiation, numbness, or paresthesia.  Menezes informed Dr. Warnock that his left ankle no longer gave way but that he occasionally had calf cramps.  Menezes walked with a normal gait and had a normal stance.  Dr. Warnock reported that Menezes enjoyed unrestricted lateral bending and could forward flex to about 60 degrees and extend to 5 degrees.  Menezes's SLR was negative on the left and mildly positive on the right, particularly beyond 70 degrees.  There were no obvious motor or sensory deficits in his lower extremities and reflexes were normal except for absent right ankle reflex.  There was no

detectable instability in either ankle. Although Dr. Warnock reported that there was "no disability in regard[] [to] Menezes's left thumb or his ankle at the present time," the doctor opined that Menezes was "100% disabled from [November 1, 1991] through [June 17, 1996]." Dr. Warnock concluded that Menezes was restricted to job activities that did not require lifting more than fifty pounds or twenty-five pounds repetitively; that did not require climbing, bending, or stooping; and that allowed Menezes the freedom to sit or stand as needed to relieve back pain.

On October 28, 1996, Dr. Munro Proctor, medical consultant for the state Disability Determination Services ("DDS"), reviewed Menezes's medical records and prepared an assessment of his physical residual functional capacity ("RFC"). Dr. Proctor concluded that Menezes could lift and carry ten pounds frequently and twenty pounds occasionally and could stand/walk or sit for six hours in an eight-hour day. Dr. Proctor further concluded that Menezes could only occasionally climb, balance, stoop,

kneel, crouch, or crawl.  After reviewing the same medical records, Dr. Burton Nault, another medical consultant for DDS, concurred with Dr. Proctor's RFC assessment.

On December 2, 1996, Menezes stated in a reconsideration of disability report that he could not climb, kneel, stoop, walk over rough terrain, or stand or sit for extended periods due to pain in his ankles and lower back.  He also reported that he could not lift more than fifty pounds, or more than twenty pounds repeatedly.  See id. at 83.  This reconsideration report was completed after Menezes underwent a second operation for his back and reconstructive surgery on his right ankle.  These medical procedures were performed to treat injuries that Menezes sustained after the expiration of his insured status under the Act.

On March 20, 1997, Dr. Cook rendered the opinion that Menezes was unable to do any heavy or repetitive work, other than tasks appropriate for a sedentary occupation.  Dr. Cook indicated that Menezes had "persistent back pain following spinal surgery

in 1995 [and that] [m]ultiple efforts at physical therapy and treatment of medications have not given him relief."

## II. <u>STANDARD OF REVIEW</u>

After a final determination by the Commissioner denying a claimant's application for benefits, and upon timely request by the claimant, I am authorized to: (1) review the pleadings submitted by the parties and the transcript of the administrative record; and (2) enter a judgment affirming, modifying, or reversing the ALJ's decision. <u>See</u> 42 U.S.C. § 405(g). My review is limited in scope, however, as the ALJ's factual findings are conclusive if they are supported by substantial evidence. <u>See</u> <u>Irlanda Ortiz v. Secretary of Health and Human Servs.</u>, 955 F.2d 765, 769 (1st Cir. 1991); 42 U.S.C. § 405(g). The ALJ is responsible for settling credibility issues, drawing inferences from the record evidence, and resolving conflicts in the evidence. <u>See</u> <u>Irlanda Ortiz</u>, 955 F.2d at 769. Therefore, I must "uphold the [ALJ's] findings . . . if a reasonable mind,

reviewing the evidence in the record as a whole, could accept it as adequate to support [the ALJ's] conclusion." Id. (quoting Rodriquez v. Secretary of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)) (internal quotation marks omitted).

If the ALJ has misapplied the law or has failed to provide a fair hearing, however, deference to the ALJ's decision is not appropriate and remand for further development of the record may be necessary. See Slessinger v. Secretary of Health and Human Servs., 835 F.2d 937, 939 (1st Cir. 1987) (per curiam) ("The [ALJ's] conclusions of law are reviewable by this court."); Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 644 (2d Cir. 1983). I apply these standards in reviewing the issues that Menezes raises on appeal.

## III. DISCUSSION

The Social Security Act defines "disability" for the purposes of Title II as the "inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected

to result in death or which has lasted or can be expected to last

for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A) (1994). When evaluating whether a claimant is

disabled due to a physical or mental impairment, an ALJ's

analysis is governed by a five-step sequential evaluation

process.[19] See 20 C.F.R. § 404.1520 (1999). At step four of the

process, the ALJ must determine whether the claimant's impairment

prevents him from performing his past work. See 20 C.F.R. §

404.1520(e). To make this determination, the ALJ must assess

both the claimant's residual functional capacity ("RFC"), that

is, what the claimant can do despite his impairments, and the

demands of the claimant's prior employment. See id.; Santiago v.

---

[19] The ALJ is required to consider the following five issues when determining if a claimant is disabled: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed impairment; (4) whether the impairment prevents or prevented the claimant from performing past relevant work; and (5) whether the impairment prevents or prevented the claimant from doing any other work. See 20 C.F.R. § 404.1520 (1999).

Secretary of Health and Human Servs., 944 F.2d 1, 5 (1st Cir. 1991) (per curiam).  The claimant bears the burden of showing that he does not have the RFC to perform his past relevant work. See Santiago, 944 F.2d at 5.  At step five, the burden shifts to the Commissioner to show "that there are jobs in the national economy that [the] claimant can perform."  Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991) (per curiam); see also Keating v. Secretary of Health and Human Servs., 848 F.2d 271, 276 (1st Cir. 1988) (per curiam).  The Commissioner must show that the claimant's limitations do not prevent him from engaging in substantial gainful work, but need not show that the claimant could actually find a job.  See Keating, 848 F.2d at 276 ("The standard is not employability, but capacity to do the job . . . .").

In the present case, the ALJ concluded at step five of the sequential evaluation process that Menezes was "not disabled." See R. at 18, 20.  The ALJ found that although Menezes had a severe impairment that precluded his return to his former

-18-

employment, he retained the RFC to perform light work.[20]  See id.

at 18, 19.  In addition, the ALJ found that Menezes was a high

school graduate, that his previous work experience had been semi-

skilled, and that he did not have transferable skills.  See id.

at 18, 19, 20.  Accordingly, the ALJ applied Rule 202.21 of the

Medical-Vocational Guidelines ("the Grid"), which directed a

conclusion of not disabled.  See id. at 18, 20; 20 C.F.R. Pt.

404, Subpt. P, App. 2 at 202.21 (1999).

Menezes argues that the ALJ's denial of his application for

benefits at step five was tainted by a variety of legal errors.

First, Menezes alleges that the ALJ should have combined and

considered his non-severe impairments with his severe impairment

---

[20]    Light work may involve "lifting no more than 20 pounds
at a time with frequent lifting or carrying of objects weighing
up to 10 pounds," "a good deal of walking or standing," and/or
"sitting most of the time with some pushing and pulling of arm or
leg controls."  20 C.F.R. § 404.1567(b) (1999).  "If someone can
do light work, . . . [he ordinarily] can also do sedentary work."
Id.  Sedentary work involves "lifting no more than 10 pounds at a
time and occasionally lifting or carrying articles like docket
files, ledgers, and small tools"; occasional "walking and
standing"; and frequent "sitting."  20 C.F.R. § 404.1567(a)
(1999).

throughout the entire sequential evaluation process. Second, Menezes argues that the ALJ improperly calculated his residual functional capacity and accordingly applied the incorrect rule from the Medical-Vocational Guidelines (the "Grid"). Third, Menezes argues that the ALJ ignored certain medical evidence that was relevant to his residual functional capacity. Fourth, Menezes contends that the ALJ failed to give the appropriate weight to medical evidence submitted by examining physicians. Finally, Menezes maintains that the ALJ did not properly evaluate his subjective complaints of pain. I address each of these arguments in turn.

A.    **ALJ's Consideration of Combined Impairments**

Menezes argues that the ALJ should have combined and considered his non-severe impairments, e.g., the injuries to his thumb and left ankle, along with his severe back impairment throughout the five-step sequential disability analysis. Menezes contends that the ALJ failed to do so and, as a result, that the ALJ erred in concluding that Menezes was not disabled under the

Act.  For the following reasons, I disagree.

"[A claimant's] impairment(s) must be severe and meet the
duration requirement before [the SSA] can find [a claimant] to be
disabled."  20 C.F.R. § 404.1520(a) (1999).  An impairment or
combination of impairments is "severe" if it significantly limits
a claimant's ability to perform basic work activities.  See 20
C.F.R. § 1520(c) (1999).  To meet the duration requirement an
impairment that is not expected to result in death "must have
lasted or must be expected to last for a continuous period of at
least 12 months."  20 C.F.R. § 404.1509 (1999); see also 42
U.S.C. § 1382c(a)(3)(A) (1994 & Supp. 1996).  Regarding the
determination of the duration requirement, some courts have
specifically held that "[t]he first two steps [of the sequential
process] involve threshold determinations as to whether a
claimant is not presently working and has an impairment which is
of the required duration and which significantly limits his
ability to do work."  Maggard v. Apfel, 167 F.3d 376, 378 (7th
Cir. 1999); see also Pate v. Heckler, 777 F.2d 1023, 1026 (5th

Cir. 1985) ("The twelve month duration requirement is a threshold requirement for the claimant to prove a disability under the Social Security Act."). "If one or more of [a claimant's] impairments improves or is expected to improve within 12 months, so that the combined effect of [the claimant's] remaining impairments is no longer severe, [the SSA] will find that [the claimant] do[es] not meet the 12-month duration test." 20 C.F.R. § 404.1522(b) (1999). Also, a claimant may not aggregate unrelated severe impairments that individually last for a shorter period to meet the duration requirement. See 20 C.F.R. § 404.1522(a) (1999) ("[SSA] cannot find you disabled, even though the two impairments in combination last for 12 months.").

Moreover, if an impairment can be reasonably remedied by treatment, it cannot serve as a basis for a finding of disability. See Bianchi v. Secretary of Health and Human Servs., 764 F.2d 44, 45 (1st Cir. 1985) (per curiam). Thus, a claimant whose impairment or impairments are no longer severe, such that he can return to substantial gainful activity within one year of

his injury, is not entitled to disability benefits.  See Titus v. Sullivan, 4 F.3d 590, 594-95 (8th Cir. 1993).

At step two of the sequential evaluation process, the ALJ has an obligation to determine whether a claimant suffers from a "severe" impairment.  See 20 C.F.R. § 404.1520(c).  "[A] claim may be denied at step 2 for lack of a severe impairment only where 'medical evidence establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered . . . .'"  Barrientos v. Secretary of Health and Human Servs., 820 F.2d 1, 2 (1st Cir. 1987) (per curiam) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (1985)).  The step two severity requirement is intended "to do no more than screen out groundless claims."  McDonald v. Secretary of Health and Human Servs., 795 F.2d 1118, 1124 (1st Cir. 1986).  If the ALJ finds a medically severe combination of impairments at step two, he must consider the combined impact of such

-23-

impairments throughout the disability determination process.  See
42 U.S.C. § 423(d)(2)(B) (1994).

Menezes argues that the ALJ should have combined his short-
term injuries with his severe back impairment when determining
his RFC.  However, the Act, the SSA's regulations, and relevant
case law clearly state that unless an impairment lasts for a
continuous period of twelve months, it cannot serve as a basis
for a disability determination.  See 42 U.S.C. § 1382c(a)(3)(A);
20 C.F.R. § 404.1509; Maggard, 167 F.3d at 378.  If an impairment
cannot serve as a basis for a disability determination, it is
reasonable for an ALJ to screen out that impairment before
performing the RFC analysis.  The RFC denotes what a claimant can
do despite his limitations.  See 20 C.F.R. §§ 404.1545(a) (1999).
Injuries that are remediated within a twelve-month period do not
limit a claimant's ability to perform work activities and thus
should not be factored into the RFC analysis.  Therefore, the ALJ
properly excluded from the RFC analysis Menezes's short-term

thumb and ankle injuries.[21]

## B.    ALJ's Evaluation at Steps Four and Five

Menezes next argues that the ALJ ignored the raw medical evidence describing the symptoms upon which the particular treatment of thumb, ankle and back injuries was based.  Menezes contends that by ignoring this evidence the ALJ erroneously determined Menezes's RFC at step four and, as a result, applied the incorrect rule from the Medical-Vocational Guidelines (the "Grid") at step five.  I first review the ALJ's RFC determination at step four.

---

[21]    In his brief on appeal, Menezes argues that his back injury met a listing level impairment and therefore that the ALJ erred by not finding that Menezes was disabled at step three. Menezes contends that the medical evidence demonstrates that he exhibited the listed symptoms of (1) pain, muscle spasms, and a significant limitation of motion in the spine; and (2) appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss. See Pl.'s Mot. (Doc. #6) at 7; 20 C.F.R. Pt. 404, Subpt. P, App. 1 at 1.05C. The SSA regulations require, however, that such symptoms persist "for at least 3 months despite prescribed therapy and be expected to last 12 months." 20 C.F.R. Pt. 404, Subpt. P, App. 1 at 1.05C. Since there is no evidence that Menezes symptoms persisted for the required duration, I find that the ALJ properly concluded that Menezes did not meet the listing level impairment at step three.

1.   RFC Determination

An RFC determination represents what a claimant is able to do despite his limitations.  See 20 C.F.R. § 404.1545(a).  The ALJ is responsible for determining a claimant's RFC.  See 20 C.F.R. § 404.1546 (1999).  Once the ALJ determines a claimant's RFC, he then uses that RFC to determine whether the claimant has the capacity to perform past relevant work.  See Manso-Pizarro v. Secretary of Health and Human Servs., 76 F.3d 15, 17 (1st Cir. 1996) (per curiam).

In determining a claimant's RFC, an ALJ is required to perform a "function-by-function" assessment of the claimant's ability to engage in work-related activities.  See SSR 96-8p, 1996 WL 374184, at *3 (1996); Ferraris v. Heckler, 728 F.2d 582, 586-87 (2d Cir. 1984).  Moreover, the ALJ must specify the evidentiary basis for his RFC determination.  See White v. Secretary of Health and Human Servs., 910 F.2d 64, 65 (2d Cir. 1990) (noting that failure to specify a basis for RFC conclusion is sufficient reason to vacate a decision of the Commissioner);

SSR 96-8p, 1996 WL 374184, at *7. When making his RFC determination, an ALJ must "consider objective medical facts, diagnoses and medical opinions based on such facts, and subjective evidence of pain or disability testified to by claimant or others." Ferraris, 728 F.2d at 585; see also 20 C.F.R. § 404.1545(a) (RFC must be based on all relevant evidence).

Because an ALJ is a lay person, however, he "is not qualified to assess residual functional capacity based on a bare medical record." Gordils v. Secretary of Health and Human Servs., 921 F.2d 327, 329 (1st Cir. 1990) (per curiam); see also Manso-Pizarro, 76 F.3d at 17; Berrios Lopez v. Secretary of Health and Human Servs., 951 F.2d 427, 430 (1st Cir. 1991) (per curiam). This means that if the medical evidence only describes the claimant's impairment(s) but does not relate those impairment(s) to an exertional level, such as light work, the ALJ may not make the connection himself. See Vital v. Shalala, Civ. A. No. 92-12695-MLW, 1994 WL 548051, at *7 (D. Mass. Aug. 11,

1994).

In the present case, the ALJ determined at step four of the sequential evaluation process that Menezes retained the RFC to perform a full range of light work. See R. at 18. In support of his decision, the ALJ provided the following function-by-function assessment:

> After reviewing all of the medical evidence and testimony in this case, I find that the claimant did have a herniated disc at L5-S1, resulting from an accident on November 1, 1991, that did place restrictions on his ability to perform basic work functions and that did persist for at least a year after the alleged onset of disability, November 1, 1991. The claimant could not have been expected . . . to lift and carry anything in excess of 20 pounds occasionally and 10 pounds frequently.

Id. at 17. Although a more specific function-by-function analysis is desirable, the ALJ's RFC assessment was in line with the assessment offered by the state's doctors. The state physicians concluded that Menezes could occasionally lift 20 pounds and frequently lift 10 pounds. See id. at 76. They also found that Menezes could stand and/or walk, with normal breaks, for about 6 hours in an 8-hour workday. See id. The state

-28-

physicians' RFC assessment also stated that Menezes: (1) had limited ability to push or pull in the upper extremity (due to the thumb injury), see id.; (2) had some manipulative limitations (due to the thumb injury), see id. at 78; (3) had no visual, communicative, or environmental limitations, see id. at 78, 79; and (4) could occasionally climb, balance, stoop, kneel, crouch, and crawl. See id. at 77. The state physicians' overall conclusion was that Menezes was capable of performing light work. See id. at 82. The record contains no other analysis of Menezes's RFC for the period prior to the expiration of his disability insurance. Moreover, the medical evidence that Menezes contends that the ALJ ignored is not linked to an specific exertional level. Accordingly, the ALJ would not have been entitled to rely on that evidence as a basis for the RFC determination. See Poland v. Apfel, No. C-99-128-B, 2000 WL 36950, at *12 (D.N.H. Dec. 22, 1999); Vital, 1994 WL 548051, at *7.

2.   Application of the Grid Rule.

After determining Menezes's RFC, the ALJ proceeded to step five and applied Rule 202.21 of the Grid, 20 C.F.R. Pt. 404, Subpt. P, App. 2, to reach a finding of not disabled. See R. at 18, 20. Menezes argues that had the ALJ properly determined his RFC, the ALJ would have found that Menezes was capable of only performing sedentary work and would have accordingly applied a different part of the Grid (e.g., Rules 201.00(h) and 202.28) to find him disabled. In other words, Menezes is challenging the particular Grid rule applied by the ALJ, not the application of the Grid itself.[22]

Because I have determined that the ALJ properly determined Menezes's RFC, I find that the application of the particular Grid rule was also appropriate.

## C.    The ALJ's Determinations Must Be Based on Substantial Relevant Evidence

Menezes claims that the ALJ improperly determined his RFC because he failed to consider certain medical evidence for the

---

[22]    Because Menezes does not challenge the propriety of the ALJ's decision to use the Grid in this case, I do not address that issue.

-30-

period between November 1, 1991 and December 31, 1991.  According to Menezes, this evidence demonstrates that he had his left hand in a cast, that he had a large right-sided herniated disc with radiculopathy, that he had a decreased sense of touch in his lateral right calf, that he had a list, that he had an antalgic gait, that sitting and walking made the pain worse, that he was unable to perform household chores, and that his treating physician observed that he experienced pain while turning on the examining table.  See Pl's. Mot. (Doc. #6) at 5.  Menezes also claims that "[t]he ALJ failed to consider the ankle surgeries, casting, crutches and the effect that they had on [Menezes's] ability to work."  Id. at 9.  For the reasons set forth below, I conclude that the ALJ considered this evidence to the extent that it was relevant and properly determined Menezes's RFC and non-disabled status.

To determine whether a claimant is disabled, an ALJ must consider and evaluate all evidence, whether objective or subjective, that is relevant to the claim.  See Cotter v. Harris,

642 F.2d 700, 704 (3d Cir. 1981); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980). The SSA's regulations define "evidence" as "anything [the claimant] or anyone else submits to [SSA] or that [SSA] obtain[s] that relates to [the] claim." 20 C.F.R. § 404.1512(b) (1999).

A "[c]laimant is not entitled to disability benefits unless he can demonstrate that his disability existed prior to the expiration of his insured status." Cruz Rivera v. Secretary of Health and Human Servs., 818 F.2d 96, 97 (1st Cir. 1986) (per curiam); see also Deblois v. Secretary of Health and Human Servs., 686 F.2d 76, 79 (1st Cir. 1982). "It is not sufficient for a claimant to establish that [his] impairment had its roots before the date that [his] insured status expired. Rather, the claimant must show that [his] impairment(s) reached a disabling level of severity by that date." Moret Rivera v. Secretary of Health and Human Servs., 19 F.3d 1427, Civ. No. 93-1700, 1994 WL 107870, at *5 (1st Cir. March 23, 1994) (per curiam) (table, text available on Westlaw) (citing Deblois, 686 F.2d at 79; Tremblay

v. Secretary of Health and Human Servs., 676 F.2d 11, 13 (1st Cir. 1982) (per curiam)). However, evidence from the post-insured period is not wholly irrelevant when it sheds light "on the question whether claimant's impairment(s) reached disabling severity before claimant's insured status expired." Id.

In his brief on appeal, Menezes fails to differentiate between injuries he sustained during the time he was insured under the Act and injuries he sustained after his disability insurance expired. Relevant evidence is evidence that shows that Menezes's impairment(s) reached a disabling level of severity by the date his disability insurance expired. See id.; Deblois, 686 F.2d at 79; Tremblay, 676 F.2d at 13. Because Menezes's insurance expired before he sustained the right ankle injury, the ALJ properly excluded evidence of that injury from his analysis.

Regarding Menezes's back injury, the ALJ found that the November 1, 1991 accident resulted in a herniated disc that required surgery. See R. at 16. The ALJ's opinion reflects consideration of the medical evidence from Menezes's treating

-33-

physicians, Drs. Johnson and Cook, as well as the opinions of the state physicians. See id. at 16, 17. The ALJ found that Menezes's back injury was a severe impairment that restricted his ability to perform basic work functions for at least one year. See id. at 17. The ALJ further found that Menezes could not have been expected to lift and carry objects weighing in excess of 20 pounds occasionally and 10 pounds frequently. See id. All of these conclusions are based on substantial evidence in the record.

Menezes also contends that the ALJ's determination that Menezes's ankle and thumb injuries were "non-severe" is not based on substantial evidence. However, as noted previously, the ALJ excluded those injuries from the analysis because they did not meet the duration requirement under the Act. Therefore, I address whether the ALJ's decision to exclude those injuries for not meeting the duration requirement is supported by substantial evidence.

The ALJ determined that Menezes's thumb injury did not meet

the duration requirement and could not be included in his disability analysis. See R. at 15. This finding is supported by evidence in the record showing that Menezes's thumb was healing well when removed from a cast on the last day of his insured status. See id. at 183, 595.

Regarding Menezes's left ankle, the ALJ found that "[a]fter casting and physical therapy for a brief period of time [Menezes's] surgeon, Dr. David Morley, was able to report in July 1992 that the left ankle was doing well and showing excellent stability." Id. at 15. Based on this evidence, the ALJ concluded that Menezes's left ankle injury did not limit his ability to perform basic work activity "for a period of time that met the durational requirements of the Act." Id.

Menezes contends that the ALJ's analysis of his left ankle injury was flawed because the ALJ ignored evidence of the injury provided by Dr. Morley. See Pl.'s Mot. (Doc. #6) at 8-9. To the contrary, it is evident that the ALJ did not ignore this evidence. Although the evidence from Dr. Morley relates to a

period after Menezes's disability insurance expired, it demonstrates that Menezes's left ankle was doing well and showing excellent stability. Such post-insured status evidence supports the ALJ's finding that Menezes's left ankle impairment did not reach disabling severity before his insured status expired. <u>See</u> <u>Moret Rivera</u>, 1994 WL 107870, at *5; <u>Smith</u>, 849 F.2d at 1225.

In short, Menezes has been unable to demonstrate that the ALJ failed to consider any evidence relevant to making a disability determination. To the contrary, it is apparent that the ALJ considered all relevant evidence in forming the conclusion that Menezes suffered from a severe back impairment. In addition, the evidence regarding Menezes's ankle and thumb injuries substantiates the ALJ's determination that those injuries did not meet the duration requirement under the Act. I find no error in this regard.

D. **Weight Given to Treating/Examining Physicians**

Menezes argues that the ALJ erred by ignoring or not according the appropriate weight to evidence provided by

Menezes's treating physician, Dr. David Morley, and examining physician, Dr. Richard Warnock. Menezes also contends that the ALJ accorded inappropriate weight to the state physicians' report. I disagree with both contentions.

A treating source is "[a claimant's] own physician or psychologist who has provided [claimant] with medical treatment or evaluation and who has or has had an ongoing treatment relationship with [the claimant]." 20 C.F.R. § 404.1502 (1999). Although the Social Security regulations ordinarily require an ALJ to give controlling weight to a treating physician's opinion regarding a claimant's impairment, this mandate is not absolute. Rather, the ALJ need only do so where objective medical evidence supports the treating physician's opinion and where that opinion is not inconsistent with other evidence in the record. See 20 C.F.R. § 404.1527(d)(2) (1999); SSR 96-2p, 1996 WL 374188, at *1 (1996); Keating v. Secretary of Health and Human Servs., 848 F.2d 271, 276 (1st Cir. 1988). Additionally, "[a] medical source opinion that an individual is 'disabled' or 'unable to work' . .

. is an opinion that is reserved to the Commissioner . . . . [T]he adjudicator will not give any special significance to [such an] opinion because of its source." SSR 96-8p, 1996 WL 374184, at *8 n.8; see also Arroyo v. Secretary of Health and Human Servs., 932 F.2d 82, 89 (1st Cir. 1991) (per curiam) ("[An ALJ is] not required to accept the conclusions of claimant's treating physicians on the ultimate issue of disability."). In short, the ultimate issue of disability is a legal conclusion, not a medical determination.

An ALJ is entitled to give evidentiary weight to medical reports prepared by consulting and non-examining physicians. See Gray v. Heckler, 760 F.2d 369, 373 (1st Cir. 1985); Rodriguez v. Secretary of Health and Human Servs., 647 F.2d 218, 223-24 (1st Cir. 1981). Such reports, when based on objective medical evidence, can constitute substantial evidence in support of an ALJ's decision. See Berrios Lopez v. Secretary of Health and Human Servs., 951 F.2d 427, 431-32 (1st Cir. 1991) (per curiam).

Menezes first argues that the ALJ ignored evidence from Dr.

Morley regarding Menezes's left ankle.  However, since the ALJ determined that Menezes's left ankle injury did not meet the duration requirement, I need not address this argument.

Menezes also claims that the ALJ failed to give appropriate weight to Dr. Richard N. Warnock's opinion as an examining physician.  Dr. Warnock opined that Menezes was one hundred percent disabled from November 1, 1991 to June 17, 1996.  See R. at 550.  An ALJ, however, is not required to accept the conclusions of a treating/examining physician on the ultimate issue of disability.  See Arroyo, 932 F.2d at 89.

Moreover, the ALJ was entitled to reject Dr. Warnock's opinion because it was inconsistent with the opinions offered by Menezes's own treating physicians.  See 20 C.F.R. § 404.1527(c)(2) (1999).  For example, Dr. Bruce Cook, the orthopedic surgeon who surgically removed Menezes's L5-S1 herniated disc, reported on March 16, 1992 that Menezes was "free of all back and leg pain," "has been doing very nicely," and was "enjoying full activities."  R. at 188.  The ALJ's decision not

to credit Dr. Warnock's opinion is proper in light of the conflict between that opinion and the evidence from Menezes's treating physician, Dr. Cook. Further, Dr. Warnock's opinion was based on a single examination of Menezes on June 17, 1996, after Menezes had injured his right ankle and reinjured his back. See id. at 549. Dr. Warnock's examination did not differentiate between injuries sustained prior to the expiration of Menezes's insured status and injuries sustained after expiration. For all of these reasons, I find that the ALJ was not obligated to credit Dr. Warnock's opinion.

I also find that the ALJ gave the appropriate weight to the state physicians' RFC assessment. Assigning significant weight to the non-examining physicians' report is particularly appropriate in the present case because it appears that, at the time the state assessed Menezes's functional limitations, the state's doctors had before them all of Menezes's medical records then available. Moreover, the record contains no other RFC assessment prepared by an acceptable medical source.

Menezes argues that one of the state physicians, Dr. Nault, based his RFC assessment on Menezes's injury to his left first metacarpal (thumb). I find that Menezes overstates the significance of Dr. Nault's references to the thumb injury. Dr. Nault found that Menezes suffered from certain upper extremity and manipulative limitations. See R. at 76, 78. Based on the entire RFC assessment, it is reasonable to conclude that Dr. Nault's reference to Menezes's thumb only relates to his findings regarding those particular exertional limitations. In other words, the only reason Dr. Nault found limitations in the upper extremity was because of Menezes's temporary thumb injury. It is clear that the state physicians based their RFC determination on all of the medical evidence on file and not solely on Menezes's thumb injury. See id. at 82. In addition, the state physicians concluded that none of the injuries that Menezes sustained prior to December 31, 1991 were expected to cause a disability for a continuous period of twelve months. See id. at 81, 82. Therefore, I find no error in this regard.

### E.    Menezes's Subjective Complaints of Pain

Finally, Menezes argues that the ALJ failed to give adequate consideration to his subjective complaints of pain.  For the following reasons, I disagree.

The SSA regulations require that a claimant's symptoms, including complaints of pain, be considered when determining whether a claimant is disabled.[23]  See 20 C.F.R. § 404.1529(a) (1999).  An ALJ must follow a two-step process to evaluate a claimant's subjective complaints of pain.  First, the ALJ must determine whether the claimant suffers from a medically determinable impairment that can reasonably be expected to produce the pain alleged.  See 20 C.F.R. § 404.1529(b) (1999); Da Rosa v. Secretary of Health and Human Servs., 803 F.2d 24, 25 (1st Cir. 1986) (per curiam).  Then, if such an impairment exists, the ALJ must evaluate "the intensity and persistence of

---

[23]    Pain can constitute either an independent and separate basis for disability or a nonexertional factor to be considered in conjunction with exertional limitations.  See Gagnon v. Secretary of Health and Human Servs., 666 F.2d 662, 666 n.8 (1st Cir. 1981).

[the claimant's] symptoms so that [the ALJ] can determine how [the claimant's] symptoms limit [his or her] capacity for work." 20 C.F.R. § 404.1529(c)(1) (1999). At this stage, the ALJ must consider "all of the available evidence, including [the claimant's] medical history, the medical signs and laboratory findings, and statements from [the claimant], [the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]." Id.

The Commissioner recognizes that symptoms such as pain may suggest a more severe impairment "than can be shown by objective medical evidence alone." 20 C.F.R. § 404.1529(c)(3). Accordingly, the ALJ is directed to evaluate the claimant's complaints of pain in light of the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the claimant's pain; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication that the claimant takes or has taken to alleviate his pain; (5) treatment,

other than medication, the claimant receives or has received for relief of his pain; (6) any measures the claimant uses or has used to relieve pain; and (7) other factors concerning the claimant's limitations and restrictions due to pain. See id.; Avery v. Secretary of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986). These factors are sometimes called the "Avery factors." In addition to considering these factors, the ALJ is entitled to observe the claimant, evaluate his demeanor, and consider how the claimant's testimony fits with the rest of the evidence. See Frustaglia v. Secretary of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam).

In assessing the credibility of a claimant's subjective complaints of pain, the ALJ must consider whether these complaints are consistent with the objective medical evidence and other evidence in the record. See 20 C.F.R. § 1529(a). While a claimant's complaints of pain must be consistent with the medical evidence to be credited, they need not be precisely corroborated with such evidence. See Dupuis v. Secretary of Health and Human

<u>Servs.</u>, 869 F.2d 622, 623 (1st Cir. 1989) (per curiam).

Menezes argues that in evaluating his subjective complaints of pain, the ALJ specifically ignored the "internal fixation of [Menezes's] left finger, a positive MRI showing a large right-sided disc herniation and positive EMG test showing radiculopathy, that is pain radiating down [Menezes's] right leg." Pl.'s Mot. (Doc. #6) at 7 (emphasis omitted).

The ALJ applied the <u>Avery</u> factors to conclude that Menezes did not experience pain at a level that would impede his ability to perform a full range of light work. <u>See</u> R. at 17, 18. For example, the ALJ found no evidence that Menezes's daily activities during the period in question were severely limited. <u>See</u> <u>id.</u> at 17. Based on evidence from Dr. Cook, the ALJ also found that after surgery Menezes was enjoying full activities and was planning to pursue additional training for work that was less physically demanding than slate roofing. <u>Id.</u> at 17, 188. The ALJ considered the evidence from Dr. Johnson that Menezes delayed surgery on his back because his pain waxed and waned and because

he obtained a second medical opinion that back surgery was unnecessary. See id. at 17, 184. The ALJ also noted that after Menezes's back surgery Dr. Cook observed that Menezes was doing well and that "[h]e was free of all back and leg pain." Id. at 17, 188. Based on all of this evidence, reviewed pursuant to the Avery factors, the ALJ concluded that Menezes's subjective complaints of pain were inconsistent with the objective medical evidence and therefore not entirely credible. See id. at 18, 19.

Menezes contends that the record is replete with evidence that he suffered from pain due to his herniated disc and that the ALJ did not consider this evidence when evaluating his pain. The record supports Menezes's claims of pain. See, e.g., id. at 144, 148, 182, 183, 185, 589. It is equally apparent that the ALJ considered such evidence of pain. See id. at 16-18. However, because Menezes's back pain persisted for only a short period and greatly subsided after his back surgery in January 1992, see id. at 188, the ALJ found that Menezes's complaints of debilitating pain lacked credibility. This finding is especially appropriate

-46-

in light of the evidence from Menezes's treating physician that Menezes was free of all back and leg pain and enjoyed a full range activities. See id. at 188. "It is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence." Irlanda Ortiz, 955 F.2d at 769. I conclude that the ALJ's determination that Menezes's complaints of pain were inconsistent with the medical evidence is supported by substantial evidence and thus entitled to deference. See Frustaglia, 829 F.2d at 195.

## IV. CONCLUSION

Because I have determined that the ALJ's conclusion that Menezes was "not disabled" during the period of his eligibility for disability benefits is supported by substantial evidence, I affirm the Commissioner's decision. Accordingly, Menezes's motion to reverse and remand (Doc. #6) is denied, and defendant's motion for an order affirming Commissioner (Doc. #8) is granted. The clerk shall enter judgment accordingly.

SO ORDERED.

                                       _____

                                       Paul Barbadoro
                                       Chief Judge

May 4, 2000

cc:  Edward F. Wallace, Esq.
     David L. Broderick, Esq.